ERVIN and others *v.* OREGON RY. & NAV. Co. and another.

*(Circuit Court, S. D. New York.   June 6, 1884.)*

1. CORPORATIONS—RIGHT OF MAJORITY OF STOCKHOLDERS TO WIND UP—MOTIVES.
    A majority of stockholders were authorized by law to dissolve the corporation and distribute its property, and availed themselves of their power to do so according to the forms of law, but sold the property to themselves at an unfair appraisal. *Held* that, although the court would not inquire into the motives of the majority as to those acts which were within the exercise of their legal powers, they had no right to sell the property to themselves at an unfair price, and must account to the other stockholders for its value.

2. SAME—APPROPRIATION OF CORPORATE PROPERTY.
    Although a majority may have full power to bind the whole body of stockholders in respect to all transactions within the scope of the corporate powers, the have no right to exercise that power in order to appropriate the corporate property to themselves at an inadequate price.

3. SAME—SALE OF CORPORATE PROPERTY—RIGHTS OF MINORITY—ACCOUNTING.
    Where the corporation is practically dissolved, and all its property sold by the action of the directors and a majority of the stockholders, the minority stockholders may maintain a suit in equity directly against the persons who have thus dissolved the corporation, and who have purchased the property, for an accounting, without making the corporation a party.

4. SAME—PARTIES—ACTION TO COMPEL ACCOUNTING.
    Such a suit may be brought by one or more of the minority stockholders without making the other minority stockholders parties.

In Equity.

*Butler, Stillman & Butler,* for complainants.

*Holmes & Adams,* for defendants.

WALLACE, J.   The principal questions raised by the demurrers to this bill are whether the Oregon Steam Navigation Company is not an indispensable party whose absence renders the bill defective, and whether the bill states a cause of action in equity.   The substantive allegations of the bill are that at the time the several transactions complained of took place the complainants were stockholders of the Oregon Steam Navigation Company, a corporation of the state of Oregon; that in 1879 that company had a capital of $5,000,000, divided into 50,000 shares, was prosperous, owned large properties, and had a valuable business; that in that year the defendant Villard conceived the scheme of acquiring control of the company and its property for his own benefit, and with this view caused another

corporation, the defendant the Oregon Railway & Navigation Company to be organized under the laws of Oregon, to which the property of the first-named company was to be transferred; that he procured himself to be elected president of the new company; that he then purchased 40,000 shares of the old company and transferred his purchase to the new company, receiving for himself a large profit by the transaction; that thereupon he and the new company concerted and consummated the design of winding up the old company, of acquiring all its property and business for the benefit of the new company, and of excluding the minority stockholders of the old company from their just interest in the assets; that in this behalf they caused a board of directors favorable to their scheme to be chosen for the old company by voting the stock owned by the new company, and, under a statute of Oregon, which permits such a corporation upon a vote of a majority of the stock to dissolve and dispose of its property, the defendants procured the dissolution and a sale and transfer of all the property and franchises of the old corporation to the new corporation.

Respecting the proceedings which took place, and the manner in which the dissolution of the old company and the transfer of its property and franchises to the new company was effected, the bill sets forth with particularity and in detail the history of the transactions. Villard, who was president of the new company, was elected president of the old company, and the directors of the new company were elected directors of the old company. Resolutions were then adopted concurrently by the board of directors of each company, on the part of the old company proposing, and on the part of the new company accepting, the purchase of all the property and franchises of the old company by the new company, at a valuation to be fixed by two appraisers, one to be selected by the old company, and one by the new company. The appraisers were selected, and agreed upon a valuation of the property at $2,300,000, which was equivalent to 46 per cent. of the par value of the stock of the old company. Thereupon the requisite corporate action was taken by both companies to sanction and confirm the transfer at the price fixed by the appraisers, concluding with a meeting of the stockholders of the old company called to effect a valid dissolution. At this meeting 46,249 shares of stock were represented, all of which were owned by the new company, or in its interest, except 456 shares owned by one Goldsmith, who had opposed the proceeding, but had been placated by the defendants. By the vote of the stock owned by the old company, a resolution was adopted confirming all that had been done by the directors; confirming the sale at the appraisement which had been made; authorizing the dissolution of the corporation; and directing the directors to carry into effect the dissolution, the sale, the settling of its business, the division of the proceeds of the sale among the stockholders, and the cancellation of all outstanding certificates of stock with all

practicable dispatch. The resolution, so far as it relates to the dissolution, is as follows: "That the said Oregon Steam Navigation Company be and hereby is dissolved, to take effect upon the transfer of the company's property, the settling of its business, and the division of its capital stock." The board of directors then met and took formal action pursuant to the resolution of the stockholders; and thereafter sent notice, under the company's seal, and signed by its treasurer, to all stockholders, stating that the company was duly dissolved, all its property conveyed to the Oregon Railway & Navigation Company, and that a final dividend of $46.97 per share had been declared payable to each stockholder upon the surrender of his certificates of stock.

The bill also alleges that the property of the old company thus sold was appraised at a grossly inadequate price; that no money passed or has ever been actually paid by the new company to the old company, although the directors went through the form,—those of one company of delivering, and those of the other of accepting, a check for the purchase money; that such stockholders of the old company as have surrendered their certificates of stock have been paid the final dividend by the new company, and the new company now holds itself out as ready to pay the remaining stockholders in the same way.

The complainants having refused to consent to the proceedings which have taken place, or to participate in the so-called dividend, have filed this bill in behalf of themselves as minority and dissenting stockholders, and in behalf of all other stockholders who may desire to join. The prayer for relief is, among other things, that the several acts of the defendants complained of be declared fraudulent and void; that the defendants be adjudged to pay complainants, and such other stockholders as may join them, their proportionate share of the value of all the property and franchises of the Oregon Steam Navigation Company; and that the Oregon Railway & Navigation Company be adjudged to hold the property it acquired as trustee for the complainants, in proportion to their holdings of stock in the former company, and that complainants have a lien thereon.

For the purposes of the demurrers, and assuming the facts alleged in the bill to be true, the case disclosed may be briefly stated as follows: A majority of the stockholders of a corporation resolve to avail themselves of their power as a quorum to sacrifice the interests of the minority stockholders for their own profit, by dissolving the corporation, and selling its property and franchises to themselves at half their real value. This scheme they have carried out, and now retain its fruits. They have thrust out the complainants, the minority, from their position as stockholders, terminating their relations with the corporation as such, and have deprived them from realizing what would belong to them upon a fair disposition and division of the corporate property. The defendant the Oregon Railway & Navigation Company is this majority of stockholders, and the defendant Villard is a privy and confederate in the whole transaction.

It is to be observed that the proceedings of the defendants were not outside of the charter or articles of association of the corporation, but, on the contrary, were carefully pursued according to the form of the organic law. They had a right to dissolve the corporation and dispose of its property and distribute the proceeds. The minority cannot be heard to complain of this because the laws of Oregon permitted it, and because it is an implied condition of the association of stockholders in a corporation that the majority shall have power to bind the whole body as to all transactions within the scope of the corporate powers. *Durfee* v. *Old Colony & F. R. R. Co.* 87 Mass. (5 Allen,) 242; *Bill* v. *Western Union Tel. Co.* 16 FED. REP. 19. Nor does it matter, in legal contemplation, that the majority were actuated by dishonorable or even corrupt motives, so long as their acts were legitimate. In equity, as at law, a fraudulent intent is not the subject of judicial cognizance unless accompanied by a wrongful act. *Clarke* v. *White*, 12 Pet. 178. In other words, if the majority had the right to wind up the corporation at their election, and they availed themselves of it in the mode which was permitted by the organic law of the corporation, neither a court of law or equity can entertain an inquiry as to the motives which influenced them. The power to do this was undoubted. The right of the majority to sell the property to themselves at their own valuation is a very different matter; it cannot be implied from the contract of association, and will not be tolerated by a court of equity. As is said by MELLISH, L. J., in *Menier* v. *Hooper's Telegraph Works*, 9 L. J. Ch. App. Cas. 350, 354. "Although it may be quite true that the shareholders of a company may vote as they please, and for the purpose of their own interests, yet the majority cannot sell the assets of the company and keep the consideration, but must allow the minority to have their share of any consideration which may come to them." If the majority sell the assets to themselves they must account for their fair value. They cannot bind the minority by fixing their own price upon the assets. A majority have no right to exercise the control over the corporate management which legitimately belongs to them for the purpose of appropriating the corporate property or its avails to themselves, or to any of the shareholders, to the exclusion or prejudice of the others. *Brewer* v. *Boston Theater*, 104 Mass. 378, 395; *Preston* v. *Grand Collier Dock Co.* 11 Sim. 327; *Hodgkinson* v. *National Live Stock Ins. Co.* 26 Beav. 473; *Atwood* v. *Merryweather*, L. R. 5 Eq. 464, note.

In *Gregory* v. *Patchett*, 33 Beav. 595, the property of a company was transferred to two shareholders in lieu of their shares, and the company was thereby practically put an end to, and the debts were thrown on the remaining shareholders. This was sanctioned by a majority of the shareholders at a general meeting; but it was held that the majority could not bind the minority in such a transaction, and it was set aside.

These observations sufficiently indicate the conclusion that the complainants are entitled to equitable relief upon such a state of facts as is exhibited by the bill. The question remains whether that relief can be obtained in the present suit. The defendants insist, by their demurrers, that the Oregon Steam Navigation Company is an indispensable party to the controversy. They also insist, in argument, that all of the stockholders of that company are indispensable parties, if the corporation is not a party. There does not seem to be any good reason why the Oregon Steam Navigation Company should be deemed an indispensable party. It is not a going concern. If the sale of the property should be set aside the corporation would be only a dry trustee for the purpose of dividing the property among the beneficial owners. The reason why such a trustee is required to be a party to a suit respecting the property is in order to bind the legal title by the decree. But here there is no trustee to dispute the legal title with the defendants. The majority stockholders exercised their lawful power to dissolve the corporation and sell its property, and they thus terminated the conventional relations between the corporation and its stockholders. They could not, however, defeat the equitable owners of the assets from following them into the hands of the defendants, and calling upon the defendants to account for their fair value. Although the resolution of the last stockholders' meeting declared that the corporation "was thereby dissolved, to take effect on the transfer of the company's property, the settling of its business, and the division of its capital stock," the board of directors were constituted the body to carry the resolution into effect. They proceeded to carry it into effect by settling its business, disposing of all its property, declaring a final dividend, and notifying the stockholders that the corporation was dissolved. Generally, it is no doubt true that the legal existence of a corporation only ceases when the surrender of its franchises has been accepted by the state. But the statute of Oregon, authorizing a dissolution upon the majority vote of stockholders, would seem to be an acceptance in advance. Although the corporation may not be effectually extinguished as against creditors, there is no difficulty in concluding that it is so far extinct that it cannot stand in the way of the enforcement by its former stockholders of their equitable rights to a fair accounting from those who have assumed to distribute its assets. *Gregory* v. *Patchett*, 33 Beav. 597–608; *State Savings Ass'n* v. *Kellogg*, 52 Mo. 583; *Perry* v. *Turner*, 55 Mo. 418.

It is urged that if the corporation is not a necessary party to the suit, no relief can be had unless all the stockholders are made parties. This point is not specifically presented by the demurrers; but if no relief can be decreed until such absent parties are brought in, it would seem that the objection might be considered upon the demurrer for want of equity. See *Vernon* v. *Vernon*, cited in Story, Eq. Pl. § 543, note. Who these stockholders are, and whether they are within the

jurisdiction of the court, does not appear. If the only relief prayed by the bill, or which could be granted upon the facts alleged, were a rescission of the sale of the property, the objection might be fatal. *Ribon* v. *Railroad Cos.* 16 Wall. 446. No relief could be granted without affecting the rights of every stockholder. But the redress which is given to a *cestui que trust,* or an equitable owner of a fund, in case of a fraudulent purchase by the trustee or other fiduciary, is either rescission or account, at the election of the injured party. Bisp. Eq. 239. Here the complainants pray for an account, and the decree may limit them to that relief. No rights of the other stockholders will be affected if such relief is granted to the complainants. Although the defendants may be called upon to meet similar claims in behalf of other stockholders, that circumstance does not stand in the way of the complainants. It suffices that relief can be granted which will not affect the rights of other stockholders. Nor does it matter that there may be other stockholders of the corporation who co-operated with the defendants in the wrongs complained of. The theory of the bill is that these defendants, while occupying the fiduciary relation towards the complainants of equitable joint-owners of the property, bought it themselves at an inadequate price, and by unfair means. They are in the position of *quasi* trustees, who have been guilty of a fraudulent breach of their trust. The right of action in such case is *ex delicto,* and the tort may be treated as several or joint, and the trustees have no right of contribution as between themselves. *Peck* v. *Ellis,* 2 Johns. Ch. 131; *Miller* v. *Fenton,* 11 Paige, 18; *Heath* v. *Erie R. Co.* 8 Blatchf. 347; *Wilkinson* v. *Parry,* 4 Russ. 272; *Franco* v. *Franco,* 3 Ves. 75.

In conclusion, it may be said that it does not lie with the defendants, who claim to have sold and divided the assets of the corporation among those who were stockholders, so that each is entitled to a specified proportion as a final dividend, to insist that others, who were also stockholders, have any interest in the question whether the sum which has been set aside for the complainants is their fair share or not. The other stockholders can acquiesce or ratify if they please. The complainants cannot be affected by their action, and do not have any interest in it. The complainants occupy substantially the position of creditors of the corporation, seeking to obtain satisfaction of their just claim out of the fund in the hand of the defendants, and having an equitable lien. Such creditors can pursue the fund wherever they can find it, without making the stockholders parties, or bringing in all who are liable to account to the fund or have an interest in its distribution. *Hatch* v. *Dana,* 101 U. S. 205.

These views meet the important questions raised by the demurrers. The other grounds of demurrer have been considered, and are deemed to be untenable.

The demurrers are overruled.