## GOLDSMITH v. KOOPMAN.

## REIZENSTEIN v. SAME.

(Circuit Court of Appeals, Second Circuit. January 7, 1907. On Rehearing February 28, 1907.)

### Nos. 51, 52.

**1. PARTNERSHIP—RELATION BETWEEN PARTNERS—PURCHASE OF INTEREST OF CO-PARTNER.**

A purchase by one partner of the interest of a copartner in the partnership will be sustained only when it is made for a fair consideration and upon a full disclosure of all important information as to value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 142.

Purchase of copartner's interest, see note to Towle v. Hammond, 40 C. C. A. 508.]

**2. SAME—FRAUD—CONCEALMENT OF FACTS.**

Complainant obtained United States and foreign patents for an invention, and a partnership was formed between complainant, defendants, and others to handle the patent and the invention abroad; a fund being contributed for the purpose by the partners, all of whom were to share in the profits. One of the defendants went to England, and there made license contracts, from which he received considerable sums in cash and was to receive more. He cabled information of such transactions to a codefendant, who, by withholding the same from complainant and another partner, owning together a half interest, and by representing that the partnership was in debt and that more money would have to be contributed, secured from them an assignment of all their interest in the partnership and patents for a consideration much less than their share of the profits already made. *Held,* that such assignment was voidable for fraud, and complainant was entitled to its cancellation, and to recover his share of the profits realized by the assignees.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 142.]

**3. FRAUD—LIABILITY—RATIFICATION OF FRAUD OF ANOTHER.**

One who knowingly accepts the benefit of a contract procured by another by fraud, in part in his interest, ratifies the transaction, and is equally liable for the fraud.

**4. PARTNERSHIP—BREACH OF TRUST BY PARTNERS—JOINT AND SEVERAL LIABILITY.**

The right of action against quasi trustees, as partners, who have been guilty of a fraudulent breach of their duty toward copartners, is ex delicto, and the tort may be treated as several or joint, and the defendants have no right of contribution as between themselves.

**5. APPEAL—PRESENTATION OF OBJECTION BELOW—EQUITY—JURISDICTION.**

The objection to the jurisdiction of a court of equity on the ground that complainant has an adequate remedy at law cannot be raised for the first time on appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1180.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 140 Fed. 616.

F. T. Hovey and Herman Aaron, for appellant.

Eugene Treadwell, Isaac Hassler, and Harrison B. Weil, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree canceling, as obtained by fraud, an assignment executed by complainant October 2, 1891, by which complainant and one Reizenstein transferred to the defendant and others all their interest in certain patented inventions and in the profits arising from a license agreement which they had made with John H. Brigham.

The undisputed facts of the case as disclosed by the proofs are these: Prior to April, 1891, the complainant Goldsmith had made an invention relating to coin holders or pocket banks, for which he had obtained letters patent in England and other foreign countries, and had transferred a half interest therein to one Reizenstein. April 14, 1891, Goldsmith and Reizenstein made an agreement with the defendant, Willard Upton, Henry M. Brigham, and John H. Brigham, whereby the parties thereto agreed to become copartners in manufacturing and selling the patented invention abroad, and to contribute $2,000 as capital; each advancing his ratable proportion, and each to share ratably in the profits. By this agreement the partnership shares of the complainant, Reizenstein, and the defendant were to be one-fourth part each, Henry M. Brigham's share was to be one-eighth part, and the shares of John H. Brigham and Upton were to be one-sixteenth part each. This agreement also provided that all matters relating to the partnership were to be "determined by a majority vote of all the parties interested," and that each party "should be entitled to one vote for each one-sixteenth interest in the copartnership." The capital was duly contributed, and Reizenstein and John H. Brigham went to England to negotiate licenses and sales. Subsequently all the parties comprising the copartnership entered into an agreement, bearing date May 5, 1891, by which John H. Brigham was made the sole licensee of the foreign patents, with the exclusive right to grant sublicenses and make and sell the patented articles during the life of the patents. By this agreement Brigham undertook to pay half-yearly a royalty of one cent each on all of the patented articles sold, and guarantied that no less than $4,000 should be paid over by him upon sales to be made within three years from the date of the agreement. This agreement had been prepared by Reizenstein and Brigham in England, and was not signed by the other parties thereto until they had returned from England, which was about June 1st, when all the parties met at New York City. While Brigham was in England he had negotiated a sublicense agreement with Wright & Butler, of Birmingham, and had begun negotiations for a similar agreement with Rollins & Co., of London. After the agreement dated May 5, 1891, making Brigham sole licensee, had been signed by all the parties, in August, 1891, the defendant Koopman went to England in the interests of a pool or subpartnership, called in the evidence "Pool No. 2," which had been formed between Koopman, Upton, and the two Brighams. Under this pool these four associates were to share all profits which might result from the license to Brigham. Neither Reizenstein nor the complainant were taken into this pool. After the defendant reached England he succeeded in making new arrangements with

Wright & Butler and with Rollins & Co., culminating in formal contracts by which these concerns undertook to pay John H. Brigham large sums by way of royalties as sublicensees, including payments in hand from one of them alone for sales of 1,200,000 of the patented articles. When these arrangements had been definitely agreed to, Koopman advised Upton of their purport by cable, and thereupon Upton promptly proceeded to procure from the complainant and Reizenstein the assignment of October 2d.

The principal controversy in the court below was whether this assignment was induced by fraud, and whether the defendant was a party to the fraud; and the principal assignments of error present the question whether the proofs justified the court below in finding against the defendant upon these issues.

We shall not undertake to recapitulate the evidence contained in the record bearing upon these questions, as the facts established by documentary evidence and by the testimony of the defendant and his own witnesses supply, with but little assistance from the other testimony, enough to call for the cancellation of the assignment. The proofs satisfactorily support the findings of the court below to the effect that the assignment was obtained from complainant and Reizenstein upon false statements made to them by Upton; that these statements were that the copartnership was in debt, that little or no business had been done abroad, and that $5,000 of new capital was needed to pay the debts and keep up the foreign business; and that when these representations were made Upton knew of the successful negotiations of Koopman in England, and that large sums of money were about to be realized for the benefit of the partnership. The assignment was induced, not only by these untrue representations, but by the concealment from the complainant and Reizenstein by Koopman and Upton of all that had lately occurred in England. Its consideration was the sum of $1,750, and for this sum the complainant and Reizenstein parted with all their interests in the partnership property at a time when these interests were worth at least five times that sum, and were worth prospectively much more.

Koopman insists that he was innocent of participation in this fraud, and that he had no knowledge of the assignment until he returned from England, shortly after it had been procured. If Upton had been the sole perpetrator of the fraud, it is unlikely that he would have spontaneously divided the benefits of it with the defendant. The assignment ran by its terms to Koopman and Upton. Both of them signed it, though Koopman signed by Kronheimer, as his attorney. In fact it was procured for the benefit of the associates in pool No. 2, and Kronheimer was a silent partner with Koopman in that pool. Defendant had advised Upton of the altered situation in England, whereby large payments would be derived from Wright & Butler and Rollins & Co. The day of his arrival he was informed about the transaction by Kronheimer. When he learned the small consideration which had been paid, he was put upon inquiry as to the honesty of the transaction. Instead of interviewing the victims he preferred to share the fruits of the purchase. He was a party to the transaction by ratification, if not originally by a previous understanding with Upton.

The assignment was a fraud in the view of a court of equity, irrespective of any direct misrepresentations. When Koopman informed Upton of the changed situation in England, without informing complainant and Reizenstein of the facts which had largely enhanced the value of their interests, he was guilty of a breach of the fiduciary duties owing by him to them as copartners. A sale by one partner to another of his partnership interest will be sustained only when it is made for a fair consideration and upon a full disclosure of all important information as to value. The concealment by Koopman of material facts, which it was his duty to disclose, was a fraud which invalidated the assignment. Story on Partnership, § 172; Brooks v. Martin, 2 Wall. 70, 85, 17 L. Ed. 732; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764.

We differ from the court below in the conclusion that the license to Brigham was inoperative. It would have been an operative instrument if Koopman had not signed it before the parties separated after their interview in New York in early June. It had been signed by the majority provided for in the partnership articles, and Koopman, as well as all the other members of the copartnership, was therefore precluded from challenging its validity as a transfer of the whole partnership interests. We cannot accept the theory that the complainant or Reizenstein supposed that it was inoperative. It was explicitly recited in the assignment as in existence, and was explicitly transferred by the assignment to Upton and Koopman; and the assertion of the complainant and Reizenstein that this was done merely as a matter of form cannot be allowed to prevail against their deliberate act. But it matters not what their suppositions may have been, so long as it was a valid and binding instrument. Its effect was to divest them and all the partners of any rights or interest in the copartnership property, except to share the royalty which might accrue from the Brigham license.

The conclusion that the license to Brigham constituted the only property of the partnership after it was executed requires a modification of the decree. The complainant was not entitled to any profits realized by Brigham under his license, or derived by the defendant and Upton through the assignment to them. He was only entitled to his fourth of the royalties which Brigham undertook to account for by the license agreement, including, by necessary implication from the terms of the license, the royalty on sales made by Brigham's sublicensees. Any profits above the royalty which might accrue to Brigham from sales by himself or by his arrangements with sublicensees became his. The negotiations by Koopman in England, which culminated in the agreements with Wright & Butler and Rollins & Co., resulted in large profits to Brigham, and incidentally to the associates in the subpool. By the agreement with Wright & Butler that concern undertook to pay Brigham $20,000 cash down, in consideration of the abrogation of certain conditions of a previous sublicense; "such sum being computed at the rate of 2½ cents United States currency upon the sale of 800,000 banks guarantied to be sold by the party of the first part (Wright & Butler) from and after the date hereof." Under that provision he or the pool received $20,000; whereas, the royalty for which Brig-

ham was to account under his license would have been $8,000. By that agreement Wright & Butler also undertook to take over orders for sales which Brigham had on hand for 400,000 banks and pay therefor $10,000. Under that provision of the agreement Brigham became accountable for royalty under his own license to the extent of $4,000. The decree awarded a recovery to the complainant upon the basis of the payments received by Brigham from his sublicensees; whereas, it should have been upon the basis of the royalties due from him under his license. No accounting was ordered, and the decree adjudged a recovery of one-fourth of the sums of money which it affirmatively appeared had been received by the subpool. We observe, also, that the decree did not provide for the restitution by the complainant of his half of the $1,750 received as the consideration for the assignment. Upon the cancellation of the assignment he was bound to restore what he had received, and the decree should have provided for the deduction of the amount from the amount otherwise recoverable against the defendant.

By the assignment to Upton and the defendant, the complainant and Reizenstein were wrongfully deprived of the share of the royalties which would otherwise have accrued to them under the license to Brigham. Upton and the defendant are jointly and severally liable for the loss induced by their fraudulent conduct. The right of action against quasi trustees who have been guilty of a fraudulent breach of their trust is ex delicto, and the tort may be treated as several or joint, and the trustees have no right of contribution as between themselves. Ervin v. Oregon Ry. & Navigation Co. (C. C.) 20 Fed. 577, 582; Peck v. Ellis, 2 Johns. Ch. (N. Y.) 131; Miller v. Fenton, 11 Paige (N. Y.) 18; Heath v. Erie Ry. Co., 8 Blatchf. 347, Fed. Cas. No. 6,306; Wilkinson v. Parry, 4 Russ. 272; Franco v. Franco, 3 Ves. 75.

We have not overlooked the contention for the appellant that the complainant had a complete and adequate remedy at law, and therefore could not resort to a court of equity. That this position is untenable sufficiently appears by reference to Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005, without the citation of other authorities.

The decree is modified, so as to direct an accounting and a recovery in conformity with this opinion, and in other respects is affirmed, without costs to either party.

On Rehearing.

PER CURIAM. We have considered the application by the appellee for a reargument, and think it should be denied, as we did not overlook the various contentions of the appellee respecting the validity and effect of the license agreement with Brigham. Nor did we overlook the consideration, though we did not refer to it in our opinion, that it does not appear to have occurred to the appellee's counsel that the court could not have adjudged that agreement to be inoperative, void for fraud, or otherwise invalid. Brigham was not a party to the suit, and no decree could have been made in his absence adjudging his license void.