### REIZENSTEIN v. KOOPMAN et al.

### GOLDSMITH v. SAME.

(Circuit Court, S. D. New York. April 14, 1909.)

PATENTS (§ 218*)—ROYALTIES—RIGHTS.

On an accounting between partners in the ownership of a patent under a license contract with one of the partners by which he was authorized to grant sublicenses, accounting to the partnership for a stated royalty on each of the patented articles sold by the sublicensee, where a sublicensee paid an agreed sum for the license privilege which entitled him to sell a stated number of the articles without further payment, the partnership is entitled to the royalty on such number, without regard to the number actually sold.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 218.*]

In Equity. Suits by Emile Reizenstein and Edwin M. Goldsmith, respectively, against Elias B. Koopman and another. On exceptions to master's report. Exceptions overruled.

See, also, 152 Fed. 173, 81 C. C. A. 465.

Harrison B. Weil (Eugene Treadwell and Isaac Hassler, of counsel), for complainants.

Parker & Aaron (Herman Aaron, of counsel), for defendant Koopman.

HAZEL, District Judge. This action arose from a breach of fiduciary relations existing between the complainants Goldsmith and Reizenstein, the defendant Koopman, and others, as copartners. It was proven at the hearing that the defendants Koopman and Upton perpetrated a fraud upon the complainants, and accordingly the Circuit Court made its decree canceling an assignment executed by them by which in terms they assigned to the defendant Koopman, for himself and his associates acting with him, their interests in the patented invention which is the subject of this controversy, together with the gains and profits arising from a license agreement which had been made by the joint owners of the patent with John H. Brigham, who was one of the copartners. It appeared that the defendant Koopman, without the knowledge of complainants, was jointly interested in said license agreement, with the fraudulent intent to secure secretly a certain contract with Wright & Butler, Limited, of London, England, to the exclusion of the complainants, whereby $20,000 was paid for sublicense rights. 140 Fed. 616, affirmed 152 Fed. 173, 81 C. C. A. 465. The master was directed by the court to make and state an account of the number of coin holders sold in foreign countries, except Canada, by or through said Brigham, the defendant Koopman, and others associated with him, or by concerns abroad, under license, "and for the sale of which banks royalty was paid." The master found, upon the evidence before him, that there had been sold by the licensee to J. G. Rollins & Co., Limited, 729,292, and to Wright & Butler, Limited, 1,087,888, pocket banks or coin holders; that such sales were made under the license agreement to Brigham, which in substance provided that there should be paid to the owners of the patent a royalty of one cent on each bank sold. The complainants under the license agreement were each entitled to receive one-quarter cent on each bank sold.

The exceptions filed herein relate to the inclusion by the master of 57,600 patented pocket banks or coin holders claimed by the complainant to have been sold to J. G. Rollins & Company, Limited, and also to an excess of 464,808 sold to Wright & Butler, Limited. The defendant claims that pocket banks were not in fact sold to Rollins & Co., but they were merely consigned to it with the understanding that they would be sold on commission for Brigham, the licensee. It appears that the banks were insured by Rollins & Co., and subsequently, while in its possession, they were destroyed by fire. The insurance policy which was issued to Rollins & Co. was subsequently delivered by it to Brigham, the insurance money was collected by it, and the amount paid to Brigham, who secretly acted for himself and associates, to the fraudulent exclusion of the complainants. The contention now is that the defendant Koopman should not be required to account for royalties on the burnt banks, for the reason that they had not been

sold to Rollins & Co. On the proofs, however, I think the banks must be considered as having been sold by Brigham, acting for himself, the defendant Koopman, and their associates. The entries in the books of the New York Introduction Company, under which name the business of selling the banks was in part conducted, and of Rollins & Co., indicate an absolute sale to the latter company, which accounted to the defendants for the banks at the rate of 5½ cents per coin holder, that being the selling price and the amount recovered from the insurance company. Such being the facts, it is a fair presumption that the parties to the transaction regarded that these particular banks had actually been sold. There are journal entries showing the return by Rollins & Co. of certain other banks to the New York Introduction Company; but, as the burnt banks were accounted for upon the basis of a sale and transfer, the master properly held the defendant accountable for such sale, and the complainants are entitled to receive their share of the proceeds in accordance with the license agreement.

In relation to the Wright & Butler transaction it appears that the arrangement was that the sublicensee was to pay and did pay $20,000 for the license rights and privileges enjoyed by Brigham. In addition thereto it is conceded that Wright & Butler also paid a royalty of $4,-813.63 on 287,000 banks sold and delivered by the New York Introduction Company. Defendant contends that it is shown by the book entries in evidence that only 623,000 banks were invoiced or actually sold to Wright & Butler, and that the amount of $20,000 paid under the sublicense contract was not a royalty on sales, and hence the master erred in requiring the defendant to account therefor. This position, however, is not maintainable. Under the license agreement Brigham obtained the right to grant sublicenses in consideration that he would pay to the owners of the patent a royalty of one cent on each bank sold. The fair intendment of the parties was that the royalty should become payable either on actual sales or upon such as were licensed to be manufactured or sold. That such was the intention evidently was recognized in the Koopman agreement (Exhibit H) with the sublicensees, for there it is stated that the $20,000 were to be paid to the licensee for his surrender of the right to sell banks in the United Kingdom, and that the amount of $20,000 was computed at the rate of 2½ cents upon the sale of 800,000 banks, which the sublicensee guaranteed to sell. In view of the conceded facts, the point that the complainant must show affirmatively that 800,000 banks were actually sold by Wright & Butler is without force. It is enough that Koopman and his associates received the sum of $20,000 upon the guaranty to sell the banks. Such amount received was a royalty within the meaning of the license agreement, for which the defendant must account at the rate of one-fourth of the royalties to each complainant, together with interest.

No sufficient reason is assigned by the defendant for sustaining the exceptions to the report of the master, and they are therefore overruled, with costs.