### REIZENSTEIN v. KOOPMAN et al.

### GOLDSMITH v. SAME.

(Circuit Court of Appeals, Second Circuit. April 11, 1910.)

### Nos. 202, 203.

**1. PATENTS (§ 218*)—LICENSE—ACCOUNTING FOR ROYALTIES.**

A licensee under foreign patents, who was to pay a royalty on each patented article sold under the license, consigned a shipment of such articles to a company in Germany, either on a sale or for the licensee, which was a question in dispute. The consignee had the goods insured, and while in its possession they were destroyed by fire, and it collected the the insurance and paid the sum to the licensee. *Held*, that such articles were to be considered as sold by the licensee, either to the consignee or the insurance company, and on an accounting the licensors were entitled to royalties thereon.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 218.*]

**2. PATENTS (§ 218*)—LICENSE—ACCOUNTING FOR ROYALTIES.**

On an accounting under a license contract, which authorized the licensee to grant sublicenses, accounting to the licensors for a stated royalty on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

each patented article sold by the sublicensee, where a sublicensee paid an agreed sum for the license privilege, which entitled him to sell a stated number of the articles without further payment, the licensors are entitled to the royalty on such number, without regard to the number actually sold.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 218.*]

Appeals from the Circuit Court of the United States for the Southern District of New York.

Suits in equity by Emile Reizenstein and Edwin M. Goldsmith, respectively, against Elias B. Koopman and another. Decrees for complainants (176 Fed. 922), and defendants appeal. Affirmed.

This cause comes here upon appeal from a final decree which overruled exceptions to the master's report and adjudged in favor of complainant against defendant for the amount found by the master. The opinion of the Circuit Court will be found in 176 Fed. 922.

F. T. Homer and Herman Aaron, for appellants.

Eugene Treadwell, for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The facts in the main controversy are fully set forth in our former opinion upon appeal from interlocutory decree, reported 152 Fed. 173, 81 C. C. A. 465. It is not necessary to restate them. A brief summary of the situation when the cause was sent to the master will be sufficient.

Goldsmith, the inventor, and one Reizenstein, were owners of letters patent in England and other foreign countries relating to coin holders or pocket banks. They entered into partnership with three other persons, and the five made an agreement (May 5, 1891) with J. H. Brigham by which the latter was made the sole licensee of the foreign patents, with the exclusive right to grant sublicenses and make and sell the patented articles during the life of the patents. By this agreement Brigham undertook to pay a royalty of one cent each on all the banks sold, and guaranteed that no less than $4,000 should be paid over by him upon sales to be made within three years from the date of the agreement. The licensee's profits under this agreement would come from arrangements with others whereby they would pay him a larger royalty than one cent on each bank sold to them, or which they might be licensed to make and sell. On May 22, 1891, Brigham made an agreement with an English company, Wright & Butler, to sublicense to them, during the life of the patent, the sole and exclusive right to manufacture and to sell the banks in all countries except the United States, France, Germany, Austria, and Belgium. The licensee agreed to buy the first 20,000 banks from the United States pending the preparation of tools to make the same itself. It further agreed to pay on the first 100,000 banks manufactured or sold a royalty at the rate of three half pence for each bank, and after that number at the rate of one penny, the additional half penny paid in respect of the first 100,000 to be paid back as a rebate by deduction from the amount

payable in respect of future royalties. Brigham agreed not to grant license to manufacture or sell to any other person, and reserved the right himself "to work the patent in England if he so desired."

In the summer of 1891 Koopman entered into a so-called "pool" or partnership with the three partners of Goldsmith and Reizenstein, of whom J. H. Brigham was one, to exploit the patented articles and share all profits which might result from the license to Brigham. Neither Reizenstein nor complainant were taken into this pool, but they were induced by Upton, one of the associates, to assign their interests in the agreement of May 5, 1891, for a small sum of money. The suit was brought to establish the proposition that this assignment was induced by fraud, and that defendant was a party to the fraud. Complainant prevailed; but we held that he was entitled to recover, not a proportionate part of all the profits made by the new pool, but the proportionate amount which would have come to him under the original agreement, one cent on each bank, calculated on the total amount of banks sold.

Two assignments of error were pressed on the argument, and those only need be considered. Defendant's statement of account filed with the master admits that 671,692 banks were sold to J. & G. Rollins, Limited. An additional 57,600 were sent to the same person from the United States, as to which Brigham testified:

"Willard Upton, who acted under my power of attorney, consigned these goods to J. & G. Rollins to be sold for my account on the commission basis. When Mr. Bainbridge handed me Willard Upton's letter, I arranged to close the consignment account and take over the goods myself. Mr. Bainbridge or J. & G. Rollins had had the goods insured, and he turned me over the document and the insurance polices. Before I had an opportunity to have the insurance policies canceled or anything done in the matter, except to take possession of them, I was advised that the German goods were all burnt up [at Hamburg]. As the policy was in either Rollins' or Bainbridge's name, I gave him back the policy and got him to cash it for me."

He made an allowance for Rollins' or Bainbridge's trouble in the matter of getting the policy cashed and himself received the insurance money. Under these circumstances we are clearly of the opinion that these 57,600 banks are to be counted as banks sold by Brigham, if not to Rollins, then to the insurance company. It is not material how much he received for them. If he did not make his insurance large enough to cover the cost to him, namely, manufacturer's charge, freight, and the one cent royalty, that was his own affair; but the evidence seems to indicate that he did receive enough to cover a profit on the shipment. The master's finding as to this item was correct.

As to sales to Wright & Butler, the only question disputed arises as to the construction of a second agreement between that concern and Brigham which was negotiated by defendant in the summer of 1891 when he was trying to secure bigger profits for the "pool" from which complainant was to be excluded. It is dated September 30, 1891, and recites the former agreement of the parties, dated May 22d. It provides that, in consideration of Brigham's surrender of the right reserved to him in the earlier agreement "to work the patent in Eng-

land, if he so desire," Wright & Butler agree to pay him the sum of $20,000 for such surrender, "such sum being computed at the rate of 2½ cents United States currency upon the sale of 800,000 banks guaranteed to be sold by the party of the first part [W. & B.] from and after the date hereof freed from the payment of any royalty or other like charge." After the sale of such quantity the royalty on additional banks was to be one cent each. In case the patent under which the banks were manufactured should be held invalid, that fact was not to prejudice the right of Brigham to the $20,000. The evidence showed that W. & B. paid the $20,000, and an additional sum of $4,813.63, which all sides agree represented royalties on 287,880 banks—apparently sold before September 30, 1891. The complainant contends that the $20,000 is to be considered merely as a bonus paid personally to Brigham to induce him to surrender his right to sell banks himself.

We cannot assent to this construction. If Brigham had continued to sell banks himself, he would have to account under the agreement of May 5th for one cent royalty on every bank he sold. The later agreement with Wright & Butler put a stop to future sales by him; Wright & Butler undertaking to sell banks themselves up to 800,000 at the larger royalty to Brigham of 2½ cents. The original licensors, of course, have no claim to the increase of royalty, which was Brigham's personal profit; but by this second Wright & Butler agreement he has, under the authority conferred on him by the partnership which owned the patent, alienated to another the right to make 800,000 of these banks and collected royalty fees thereon in advance. It is immaterial when these banks were made, or whether the whole number are never made. Royalties freeing them from the patent have been paid once for all, under an agreement not to make reclamation for any part of them, should the patent be held invalid. To the extent of the 800,000 his licensors are entitled to look to Brigham for the royalties he agreed to pay to them at the stipulated rate of one cent each.

We concur fully with the Circuit Court in the conclusion that the exceptions to the master's report should be overruled, and the report confirmed.

Decree affirmed, with costs.