## COGDALL et al. v. COTTRELL.

No. 10195—Opinion Filed May 31, 1921.

(Syllabus.)

1. **Partnership—What Constitutes — Agreement Jointly to Purchase Oil Leases.**

An agreement by four parties to purchase a block of oil and gas leases, each party to own an undivided one-fourth interest in said leases, said leases being purchased for the purpose of sale and division of profits, constitutes the parties to the agreement a partnership.

2. **Partnership — Relation of Partners—Trust and Confidence.**

Partners occupy a relation of trust and confidence toward each other, and are bound to exercise the utmost good faith in their transactions with each other, and must abstain from fraudulent conduct in their transactions with each other.

3. **Same—Action by Partner for Share on Termination of Partnership.**

Where a partnership relation has ceased to exist and there are no debts outstanding

and the effect of the action is to establish the interest of one of the partners to the partnership and recover the same from co-partners who have fraudulently withheld his interest in the assets of the terminated partnership, the court is vested with jurisdiction to grant the relief.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by B. F. Cottrell against W. E. Cogdall and others to recover a share in certain partnership assets. Judgment in favor of plaintiff, and defendant appeals. Affirmed.

Carl Kruse, for plaintiffs in error.

A. L. Zinser, for defendant in error.

KENNAMER, J. The defendant in error, B. F. Cottrell, commenced this action in the district court of Garfield county against the plaintiffs in error, W. E. Cogdall, F. H. Bowers, and W. M. Shockley, to recover $612.50 alleged to be due as his pro rata share of the sale of certain oil and gas leases which had been sold for the sum of $2,850. The parties herein will be referred to as they appeared in the trial of the cause.

From the pleadings filed and the evidence introduced in the trial of the cause, B. F. Cottrell, F. H. Bowers, W. M. Shockley and Charles Carr in March, 1916, entered into an oral agreement in which it was stipulated that the parties were to secure a block of oil and gas mining leases on lands in Washington township, Garfield county, Oklahoma, and the parties further agreed that all such leases secured, for convenience, were to be taken in the name of F. H. Bowers, one of the defendants herein; that pursuant to the agreement they leased about six thousand (6,000) acres of land, in which each of the parties had an undivided one-fourth interest in said leases; that sometime after the leases were obtained Charles Carr sold his undivided one-fourth interest in the leases to Dr. D. S. Harris, and thereafter the said Harris sold the undivided one-fourth interest he had purchased to W. E. Cogdall, one of the defendants herein; that after W. E. Cogdall had become an owner of the undivided one-fourth interest formerly owned by Charles Carr, one of the original purchasers, it is alleged by the plaintiff in his petition, F. H. Bowers, W. M. Shockley, and W. E. Cogdall conspired together to defraud the plaintiff out of his interest in the leases and the proceeds to be derived from the sale of the same, and that said defendants, without the knowledge or consent of the plaintiff, sold the leases to the Permian Oil Company, and that the defendant, F. H. Bowers, assigned and transferred the leases to said oil company, receiving the sum of $2,850 as the purchase price of said leases. The defendants in their answer filed in the cause alleged that, prior to the sale of the leases to the Permian Oil Company, the plaintiff, B. F. Cottrell, had sold all his right, title, and interest in and to said leases, being an undivided one-fourth interest, to W. E. Cogdall, and on the date of the sale of the leases to the Permian Oil Company had no interest in the leases, and the evidence of the defendants introduced tended to support their theory of the transaction. It is undisputed in this case that the plaintiff, under the original agreement of procuring the leases, did own an undivided one-fourth interest, and the decisive question in this cause is whether or not the plaintiff in the sale of the leases to the Permian Oil Company was defrauded in the transaction. The plaintiff contended in the trial of said cause that on September 30th, Bowers, one of the defendants herein, sent Shockley, another one of the defendants herein, to see him with reference to selling his interest in the leases, and that Shockley told the plaintiff that they had a purchaser who would pay him $100 for his interest in the leases; that he refused the proposition, stating that he would rather lose all he had in the leases than to sell for such a small sum; that after Shockley returned to Drummond and reported to Bowers, Bowers went to Enid and saw Cogdall and that Cogdall mailed a check to the plaintiff for $100, writing on the check "for interest in oil leases;" that when he received the check he was busy sowing wheat and carried it sometime before cashing it, and that before he cashed the check he saw Shockley and Bowers and they each told him that they had sold the leases and only received $400 for them, and that the check was the oil company's check; that he did not know Cogdall at the time and did not know that he had bought the Harris interest in the leases, and that Bowers and Shockley finally convinced him that the leases had been sold for only $400 and that he accepted the check and cashed it the same day that the leases were sold by the defendants for the sum of $2,800. The respective contentions of the parties to this cause were sharply contested in the trial, but upon the issues joined the jury returned a verdict for the plaintiff for the sum of $300. From the judgment entered in accordance with the verdict of the jury, the defendants have appealed to this court and four assignments of error are presented for grounds for reversal of the judgment:

First. Error of the court in excluding evidence offered by the defendants.

Second. Error in refusing to give proper instructions, and also in giving instructions which do not properly state the law.

Third. There is no evidence whatever in the record to support a verdict against the defendant W. E. Cogdall.

The first assignment argued in the brief of counsel for defendants is that the court erred in excluding evidence offered by the defendants. There is no merit in this assignment, as the evidence excluded merely tended to establish something that is admitted by all the parties to this controversy, and that is that the plaintiff received a check for $100 through the mail with a letter stating that it was in payment of his interests in the oil leases. All the parties agreed that he did receive the letter and check and as to the contents of the same.

The second assignment of error complained of is on account of the court refusing to give instruction No. 4 requested by the defendants, to the effect that a person has a right to sell and transfer any property and interest in property which he has without the consent and knowledge of others. The court did not err in refusing this instruction, as that was not the decisive issue in the cause. Instruction No. 5 by the defendants in substance requested the court to instruct the jury that it was unnecessary for the plaintiff to execute an assignment in writing in order to transfer his interest in the leases. That was not a material issue in the case. Under the second assignment, counsel complained of the action of the court in giving instructions Nos. 5 and 6, which are as follows:

"Number Five: You are instructed that where parties enter into an agreement to engage in a business and divide the profits and share the expenses equally, that such an agreement in the eyes of the law constitutes a partnership, and you are instructed that in a partnership every partner is required to exercise the utmost good faith towards his copartners, and a partner is not entitled to make a secret profit out of a business transaction connected with the partnership business; but that the partners are all entitled to share equally in all profits made in any transaction connected with the partnership business.

"Number Six: You are instructed that if the defendants or any of them prior to the alleged purchase of the plaintiff's interest in said leases by the defendant, W. E. Cogdall, had received any offers for said leases in excess of the sum of $400.00 for an entire interest in said leases or $100.00 for a one-fourth interest, that it was their duty under the law to communicate such offers to the plaintiff. You are further instructed that if you find that the defendants, or any of them, had received an offer in excess of $400.00 for said leases or the sum of $100.00 for a one-fourth interest

therein and if the defendants or any of them purchased such leases of the plaintiff without disclosing to him the fact of such offers, such failure to disclose all the facts to the plaintiff would constitute fraud upon him, and your verdict should be for the plaintiff."

We cannot agree with the contention of counsel that instructions Nos. 5 and 6, as given by the court, erroneously state the law. Counsel based their contention on the ground that there was error in giving the instruction in that the plaintiff made no claim in his petition that the defendants were partners in dealing with the property in controversy. An examination of the petition discloses that it does state facts sufficient, if true, to constitute a partnership for the purpose of buying and selling the leases in controversy.

This court, in the case of Chowning v. Graham, 74 Oklahoma. 178 Pac. 676, held:

"A valid partnership may be formed for the purpose of buying up a single piece of real estate, selling it, and dividing the profits."

Upon a review of the record in this cause we conclude there did exist a partnership for the purpose of buying and disposing of the leases in controversy, and that the partnership contemplated a fair, just, and equitable division of the profits derived upon a termination of the business for which the partnership was entered into.

In the transaction of the business between partners it is an imperative duty for each partner to deal in the utmost of good faith, and partners in business should not make any false representations or indulge in any concealments which may result in injury to a copartner.

In the case of Nelson v. Matsch, 110 Pac 868, the Supreme Court of Utah said:

"One of the fundamental principles of the law of partnership is that partners stand in a fiduciary relation to each other, and that it is the duty of each partner to observe the utmost good faith towards his copartners in all dealings and transactions that come within the scope of the partnership business. 22 Am. & Eng. Ency. Law, 114, and cases cited. And, where one partner by false representations obtains an undue advantage over a copartner in transactions connected with the partnership business, equity will grant the defrauded party relief. 'Partners occupy a relation of trust and confidence within the meaning of the rule, and in dealing with each other each is bound to disclose all the material facts known to him and not known to the other,' 14 Am. & Eng. Ency. Law, 70. The rule is well stated in Story on Partnership (7th Ed.) section 172, in the following language: 'Good faith not

only requires that every partner should not make any false representations to his partners, but also that he should abstain from all concealments which may be injurious to the partnership business. If, therefore, any partner is guilty of any such concealment and derives a private benefit therefrom, he will be compelled in equity to account therefor to the partnership.' So in Parsons on Partnership (4th Ed.) section 151, it is said: 'From the requirement of perfectly good faith, it follows that no partner must deceive his copartners, for his benefit and their injury, either by false representations or by concealments. Thus, if he persuades them into any course of business, or to any single transaction, by these means and losses occur, he must sustain them or compensate for them. So if he proposes to buy of them the whole or any part of their share of the business, and by any false statement or intimation on his part, or any concealment or prevarication, influences them to enter into an arrangement to effect his wishes, it will not be obligatory on them.' In Smith on Fraud. section 114, the author says: 'Where a confidential relation exists and there is any misrepresentation or concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interfere and pronounce the transaction void, and, as far as possible, restore the parties to their original rights.' To the same effect are the following authorities: Lindley on Partnership (2 Am. Ed.) section 486; Pomeroy v. Benton, 57 Mo. 531; Goldsmith v. Koopman, 152 Fed. 173, 81 C. C. A. 465; Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732; Holmes v. Gilman. 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 46.''

Counsel contends that if the court adopts the theory in this case that a partnership existed, then the action cannot be maintained. This court in the case of Chowning v. Graham, 74 Oklahoma, 178 Pac. 679, supra, held:

"So long as the partnership relation exists and there are debts of the firm, the rule contended for by the defendant would apply, because in that case, as stated in the New Jersey case, this rule is to secure the right of each partner to have the firm property applied to the payment of the firm debts. But in this case, where there was but a single transaction, where there were no debts outstanding and where the object of the suit was to terminate the partnership by establishing the interest of one of the parties in the assets of the partnership, it was within the power of the court to render the judgment it did, decreeing the plaintiff an interest in the real estate and making him a tenant in common with the defendant."

In this case we conclude that the purpose of the partnership for which it was originally entered into had terminated prior to the time of filing the suit, and that the plaintiff by this action was entitled to establish his interest in the assets of the partnership. Just

why the jury rendered a verdict and the court entered judgment for $300, when under all the testimony the plaintiff was entitled to recover the sum of $612.50, is not material on this appeal, but the defendants will not be heard to complain because the jury failed to render a verdict in favor of the plaintiff for the amount he was entitled to recover, thereby letting them settle a debt for a less sum than was actually due. It is probable that the jury allowed some credit to the defendants for expenses and time expended in making the sale of the leases.

After a careful examination of the entire record we are of the opinion that the judgment should be affirmed. It is so ordered.

HARRISON, C. J., and JOHNSON, McNEILL, MILLER, and ELTING, JJ., concur.