## NELSON v. MATSCH.

No. 2129.   Decided August 31, 1910 (110 Pac. 865).

1. PARTNERSHIP—SALE OF INTEREST—FRAUD—EVIDENCE—WEIGHT. Evidence in an action for partnership accounting *held* to show that plaintiff was induced to transfer his interest to defendant through the latter's misrepresentation as to the value of the partnership property. (Page 128.)

2. PARTNERSHIP—FIDUCIARY RELATION. Partners stand in a fiduciary relation to each other, and each must use the utmost good faith toward his associates in all partnership business, and, where one partner by false representations obtains an undue advantage over another in a partnership transaction, equity will grant the defrauded party relief. (Page 128.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Action by Rasmus Nelson against Henry Matsch.

Judgment dismissing the action. Plaintiff appeals.

REVERSED, with directions.

### STATEMENT OF FACTS.

This is an action for an accounting of partnership funds. The facts and circumstances leading up to and out of which this controversy arose are as follows:   Rasmus Nelson, plaintiff, and Henry Matsch, defendant, in July, 1905, at Eureka,

Utah, "entered into and formed a copartnership for the purpose of taking and working and operating leases on divers and various blocks of ground on the various levels in the Bullion-Beck mine in Tintic Mining District, Juab County, Utah, owned and operated by the Bullion-Beck & Champion Mining Company, a corporation. The partnership took, worked, and operated various leases and blocks of ground" in said mine. The rules and regulations of the mining company from which the leases were obtained required all business relating to the leasing of ground to be transacted in the name of one person only. In pursuance of these rules, the leases, each of which was for a period of three months, were taken in the name of Matsch. When a lease expired, the partnership acting through and in the name of Matsch would obtain another from the company. No new agreement of partnership was entered into by the parties on the taking of a new lease, but they continued to work and do business under the partnership agreement entered into by them in July, 1905. All ores mined under the lease were shipped in the name of Matsch, who received the proceeds thereof, and regularly made monthly settlements with Nelson until September, 1907. On July 23, 1907, Nelson left the property leased by the partnership, and took charge of a mine in another part of the district. Before leaving, he had a talk with Matsch in regard to the matter, and it was agreed that Matsch should manage the partnership business during Nelson's absence at the stipulated price of four dollars per day. At that time the partnership was operating on what was known as "Blocks 6 and 7 North 500 Level" in the Bullion-Beck mine, and kept employed thereon an average of four men. The partnership had tools and supplies consisting of drills, picks, hammers, shovels, wheelbarrows, powder, fuse, caps, and candles. Nelson was never at the property worked by the partnership after July 23, 1907, and knew nothing of the partnership business except what was told him by Matsch, the manager. The proceeds of the ore shipped under the lease were received by Matsch about the middle of each month. He would first pay all debts of the partnership in-

curred in mining and marketing the ores, then deduct the four dollars per day due him as manager of the partnership business, and then divide the balance of the proceeds between himself and Nelson. In August, 1907, he had a settlement with Nelson for the July shipment and in September for the August shipment. After making the August shipment, the partnership during the month of September and the first four days of October, 1907, "broke down" practically all the ore in blocks six and seven.

In the latter part of September, 1907, some disagreement arose between Nelson and Matsch, the facts and circumstances of which do not appear in the record, and their relations became somewhat strained. On October 5, 1907, Matsch offered to purchase Nelson's interest in the ores mined by the partnership since the August shipment. At the time the offer was made the partnership had fifty tons of ore in transit to the smelters and about the same amount broken down in the mine ready for shipment. The ore in transit netted the partnership three hundred and sixty-eight dollars, and the ore in the mine ready for shipment, which was a higher grade and much more valuable than any theretofore shipped by the partnership from blocks six and seven netted three thousand, two hundred and thirteen dollars and twenty cents; the sum total of the profits to the partnership being three thousand, five hundred and eighty-one dollars and twenty cents. Nelson who knew nothing of the value of the ore except what Matsch told him finally agreed to take five hundred dollars for his interest. Thereupon Matsch prepared and Nelson signed a writing denominated by the parties a "release," of which the following is a copy: "Eureka, Utah, October 5, 1907. I hereby release all my interest in blocks six and seven North five hundred level Bullion-Beck mine, and all ores broke up to October the 5th, 1907; also all interest in lot three hundred and fifteen sold in month of September to Henry Matsch for the sum of five hundred dollars. Rasmus Nelson." At the time this document was signed and delivered Matsch paid Nelson the five hundred dollars mentioned therein, and re-

marked, as he handed him a check for the amount: "I don't know whether I will get five hundred dollars out of it." Nelson testified that Matsch told him at the time of the transaction that the ore in question was of about the same grade and value as that contained in the former shipments made by the partnership from blocks six and seven, and that the profit on the ore in transit would be about one hundred and eighty dollars to each of them, and that the ore broken down in the mine when marketed would net each about three hundred and twenty dollars; that he relied on the statements of Matsch regarding the value of the ore and believed he was telling the truth; that he, Nelson, had never seen the ore, and knew nothing about its value except what Matsch told him; that at the time he accepted the check he stated to Matsch: "Well, if you don't get your money back, I have the money ready for you. I don't want any more than I am entitled to." Nelson further testified that at the time Matsch offered to purchase his interest in the ore Matsch said that Doty, the superintendent of the mine, told him that some of the ore in question had been taken from block five (which block was not included in the lease), and that he would not permit them to ship the ore broken down by the partnership, and that they could not get a lease on block five, the ground adjoining blocks six and· seven, and through which the ore body on which the partnership had been working extended, unless there was some settlement between them, the partners, for the ores already mined; that it was necessary for him to relinquish his interest in blocks six and seven to Matsch; that, if the relinquishment were not made, "he (Matsch) would have to go down next day and stop work." None of this evidence was denied except that Matsch testified that he did not understand Nelson to say that he would make good the loss in case the profits on the ore should be insufficient to reimburse him for the money he paid Nelson for his interest, "and anything like that"; that he did not say to Nelson that Doty would not permit them to ship the ore broken down in the mine by the partnership unless Nelson relinquished to Matsch his interest therein. Other witnesses testified, and

their testimony on this point is not denied, that Matsch in talking over the transaction in question with them stated that Nelson promised "to make good if he (Matsch) did not pay even on the deal." These witnesses also corroborated the other points in Nelson's testimony denied by Matsch. Matsch further testified that at the time of the transaction he did not know what the value of the ore per ton was, but that it had the appearance of being of the same grade and value as the ore contained in the former shipments made by the partnership from blocks six and seven. · The undisputed evidence shows, in fact Matsch admitted, that he had samples of the ore broken down in the mine and ready for shipment assayed before he offered to purchase Nelson's interest, and that these assays showed that "the ore would go one hundred dollars per ton; that it looked good" to him. Matsch also admitted that he had remarked to other parties "that that ore (referring to the fifty tons broken down in the mine and ready for shipment at the time Nelson signed the so-called release) would go one hundred dollars a ton." In November, 1907, Nelson learned that he had been deceived and imposed upon by Matsch, and thereby induced, as alleged in his complaint, "to dispose of his interest in the ore for a very grossly inadequate amount." He immediately placed the matter in the hands of an attorney, who endeavored, but failed, to effect a settlement with Matsch. On June 17, 1908, ten days prior to the bringing of the action, Nelson served upon Matsch a demand in writing for a full accounting of their partnership business, and tendered Matsch the five hundred dollars received by him for his interest in the ore. Matsch refused to accept the money or to make any further accounting of the partnership business. Thereupon Nelson commenced this action. Matsch filed an answer, in which he admitted the partnership and the leasing by it of ground in the Bullion-Beck mine, but alleged a dissolution of the partnership, and that there had been a full and complete settlement between him and Nelson of all the partnership business.

The court found the issues in favor of defendant and rendered judgment dismissing plaintiff's action. To reverse the judgment plaintiff appeals.

*B. N. C. Stott* and *Pennel Cherrington* for appellant.

*Richards, Richards & Ferry* for respondent.

McCARTY, J. (after stating the facts as above).

Counsel both for Nelson and Matsch have devoted much space in their briefs to the discussion of the question as to whether or not the transaction of October 5, 1907, in which Nelson signed the release and received five hundred dollars for his interest in the ores mentioned, terminated the partnership. This question, as we view the case, is unimportant. While Nelson, in the prayer of his complaint, asks "that an accounting be taken and made of all the dealings and transactions of said partnership from the beginning hereof" to the date of the filing of the complaint in this action, yet the parties in the trial of the case confined their proof to the facts and circumstances leading up to and surrounding the transaction of October 5, 1907, in which only ores mined prior to that date were involved. No claim was made by Nelson to proceeds of ores mined and shipped under leases obtained after the lease to blocks six and seven expired. Nor did he prove, or offer to prove, the value of ores mined under leases taken by Matsch or in his name after October 5, 1907. Therefore, as stated, the question of whether the partnership was dissolved by the transaction of October 5, 1907, or was terminated by the bringing of this action, is wholly immaterial, as it in no way affects plaintiff's right to recover for his proportion of the proceeds of ores mined by the partnership in blocks six and seven. The decisive question, and the only one we are called upon to determine on this appeal is, was Nelson induced to part with his interest in the ores mined by the partnership during the month of September, 1907, which ores, as we have observed, were of the net value of three thousand, five hundred and eighty-one dollars and twenty

cents to the partnership for the sum of five hundred dollars through the fraudulent misrepresentation of Matsch respecting the value of the ores. Matsch testified that he told Nelson at the time he offered to purchase Nelson's interest in the ores that his, Nelson's, proportion of the proceeds of the ores would be about five hundred dollars.

We think it clearly appears from the evidence that Matsch at the time he made this statement to Nelson knew, or had good reason for believing, that Nelson's proportion of the proceeds of the ores would be far in excess of five hundred dollars. And we are also of the opinion that the evidence when considered in its entirety shows that Nelson was induced to part with his interest for less than one-third of its actual value through false representations made to him by Matsch respecting the value of the ore.

One of the fundamental principles of the law of partnership is that partners stand in a fiduciary relation to each other, and that it is the duty of each partner to observe the utmost good faith towards his copartners in all dealings and transactions that come within the scope of the partnership business. (22 Am. & Eng. Ency. Law, 114, and cases cited.) And, where one partner by false representations obtains an undue advantage over a copartner in transactions connected with the partnership business, equity will grant the defrauded party relief. "Partners occupy a relation of trust and confidence within the meaning of the rule, and in dealing with each other each is bound to disclose all material facts known to him and not known to the other." (14 Am. & Eng. Ency. Law, 70.) The rule is well stated in Story on Partnership (7th Ed.), section 172, in the following language: "Good faith not only requires that every partner should not make any false misrepresentations to his partners, but also that he should abstain from all concealments which may be injurious to the partnership business. If, therefore, any partner is guilty of any such concealment and derives a private benefit therefrom, he will be compelled in equity to account therefor to the partnership." So in

Parsons on Partnership (4th Ed.), section 151, it is said: "From the requirement of perfectly good faith, it follows that no partner must deceive his copartners, for his benefit and their injury, either by false representations or by concealments. Thus, if he persuades them into any course of business, or to any single transaction, by these means, and losses occur, he must sustain them or compensate for them. So, if he proposes to buy of them the whole or any part of their share of their business, and by any false statement or intimation on his part, or any concealment or prevarication, influences them to enter into an arrangement to effect his wishes, it will not be obligatory on them." In Smith on Fraud, section 114, the author says: "Where a confidential relation exists and there is any misrepresentation, or concealment of a material fact, or any just suspicion of artifice, or undue influence, courts of equity will interfere and pronounce the transaction void, and, as far as possible, restore the parties to their original rights." To the same effect are the following authorities: Lindley on Partnership (2 Am. Ed.), section 486; *Pomeroy v. Benton,* 57 Mo. 531; *Goldsmith v. Koopman,* 152 Fed. 173, 81 C. C. A. 465; *Brooks v. Martin,* 2 Wall. 70, 17 L. Ed. 732; *Holmes v. Gilman,* 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463. Applying the law as declared by the foregoing authorities to the facts in this case, we are clearly of the opinion that Nelson is entitled to recover in this action. The record shows that the net value of the ore in question at the time the transaction was entered into (October 5, 1907) was three thousand, five hundred and eighty-one dollars and twenty cents, of which one-half (one thousand, seven hundred and ninety dollars and sixty cents) belonged to Nelson. Matsch paid Nelson five hundred dollars, which deducted from one thousand, seven hundred and ninety dollars and sixty cents leaves one thousand, two hundred and ninety dollars and sixty cents still due Nelson.

It is therefore ordered that the judgment be reversed, with directions to the trial court to set aside its findings heretofore

made in so far as they are inconsistent with this opinion, and to make findings in accordance with the views herein expressed and enter judgment in favor of Nelson for the sum of one thousand, two hundred and ninety dollars and sixty cents, with interest thereon at the rate of eight per cent. per annum from October 5, 1907, costs to be taxed against respondent.

STRAUP, C. J., and FRICK, J., concur.