Marius BURKE, Jr., Plaintiff and Respondent,

v.

Norman FARRELL, Defendant and Appellant.

No. 18033.

Supreme Court of Utah.

Dec. 15, 1982.

Dale E. Stratford, Ogden, for defendant and appellant.

Herwig Glander, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

In this suit, former partners sought equitable relief to clarify their rights after the termination of their business relationships. Plaintiff sought a declaratory judgment. Defendant counterclaimed for rescission, an accounting, and damages. The district court's declaration of rights and accounting decree was predominantly favorable to plaintiff, and defendant took this appeal. For clarity of reference, this opinion will

refer to plaintiff as the "financing partner" and to defendant as the "manager."

The financing partner organized the limited partnership of Fairfield Enterprises on June 1, 1978. His capital contribution was an automobile service station. He owned the entire partnership, 5% as general partner and 95% (directly or through family ownerships) as limited partner. Except for the later addition of a three-acre tract of undeveloped land adjoining it, the service station was the only significant asset owned by Fairfield Enterprises.

On July 1, 1978, the financing partner sold the manager a 50% limited partnership interest in Fairfield Enterprises for $25,000, payable in monthly installments of $330.38 over a ten-year period, with interest at 10%. The terms of sale included a provision that if the buyer should default on his payments the seller could forfeit his interest upon repaying all principal previously paid on the contract. On July 1, 1978, Fairfield Enterprises, as "Landlord," leased the service station to the manager, as "Tenant," for $1,100 per month plus 14% of the net monthly profits.

The service station, known as Fairfield Services, commenced operation that same day. The manager handled all aspects of the station's management, including hiring and firing, ordering supplies, collecting receipts, entering into contracts, and making sales. He also controlled the financial records. The financing partner offered advice and assistance when asked, and secured several permits for the service station before it commenced operations.

Fairfield Services was profitable for about eight months, but by April, 1979, it was suffering serious cash-flow problems. A loan of $16,000 from the financing partner improved the situation. However, by December, 1979, suppliers' bills, tax liabilities, and other obligations were again in arrears, and the financing partner approached the manager about the problem.

After some discussion, the parties reached an agreement. The financing partner would take over the operation of the service station and conduct an accounting to determine whether he owed the manager money or vice versa. As part of this agreement, the manager agreed to surrender his limited partnership interest in Fairfield Enterprises upon being credited with the principal payments he had made toward the purchase of that interest.

After completing his examination of the books, the financing partner concluded that the manager owed him $7,918. He also took the position that the manager was responsible for all unpaid debts of the service station (apparently totalling about $38,000) since Fairfield Services had been his sole proprietorship. When the manager disagreed with both conclusions, the financing partner sought this declaratory judgment. The manager counterclaimed, alleging that the service station was part of the partnership, Fairfield Enterprises, which was therefore responsible for the station's unpaid debts. The manager also sought $85,000 in damages, claiming that he had been defrauded of his partnership interest since the financing partner did not tell him its value when he reacquired it.

The district court found that Fairfield Services had been run as a sole proprietorship. As a result, the manager was solely responsible for the service station's unpaid debts. The court also found that the parties had entered into the settlement agreement described above, and that the manager had thereby surrendered his interest in Fairfield Enterprises. The court's careful accounting, which balanced all of the parties' debits and credits against one another in respect to Fairfield Enterprises and Fairfield Services, found that the financing partner owed the manager $10,565.51.

■ 1. There is substantial evidence in the record to support the district court's finding that Fairfield Enterprises and Fairfield Services were two separate business entities. The documents in evidence, including the original partnership agreement on Fairfield Enterprises, the contract for the sale of the limited partnership interest therein, and the lease of the service station from Fairfield Enterprises to the manager,

all support the finding that these were separate entities. So does the conduct of the parties, including the monthly lease payments from Fairfield Services to Fairfield Enterprises, and the filing of separate tax returns for each organization. In the lease agreement, the manager expressly agreed to "pay all bills related to the operation of the business." We therefore reject the manager's attack upon this key finding, and sustain the district court's conclusion that the manager was responsible for the unpaid debts of the service station.

2. The manager also argues that the financing partner had a duty to disclose the value of the manager's limited partnership interest before acquiring it from him in the settlement. This failure to disclose is characterized as "constructive fraud."

Partners obviously occupy a fiduciary relationship and must deal with each other in the utmost good faith. U.C.A., 1953, § 48–1–18; *Nelson v. Matsch,* 38 Utah 122, 128, 110 P. 865, 868 (1910). This duty applies when one partner (especially a managing partner) seeks to purchase the interest of another partner. *W.A. McMichael Construction Co. v. D & W Properties, Inc.,* La.App., 356 So.2d 1115, 1120–22 (1978); *Annot.,* 4 A.L.R.4th 1122, 1129–45 (1981). In such a case, a breach of duty occurs if the acquiring partner falsely represents or conceals matters with respect to the value of the interest of the selling partner. *Nelson v. Matsch, supra,* 38 Utah at 128–29, 110 P. at 868; *W.A. McMichael Construction Co. v. D & W Properties, Inc., supra,* at 1122; U.C.A., 1953, § 48–1–17.

In this case, however, no false representation or concealment has been alleged. Rather, the manager's only claim is that the financing partner did not voluntarily disclose to him the value of his partnership interest. Such a failure is not a breach of fiduciary duty where the manager has ample access to information about the value of his partnership interest. Here the party who was relinquishing the limited partner-

ship interest managed and kept the financial records of the primary partnership asset, the service station. He also admitted to having ready access to the records of the partnership, Fairfield Enterprises, as was his right under the limited partnership agreement and by law. U.C.A., 1953, § 48–1–16. Whatever duty of affirmative disclosure might exist in a circumstance where the partners have decidedly unequal access to information about the nature or value of the partnership assets, that duty does not exist or was not violated on the facts of this case.[1] *Cf. Craft v. Bates,* Okla., 372 P.2d 10, 13 (1962); *Geddes's Appeal,* 80 Pa. 442, 462 (1876).

The manager makes several other arguments in his brief. However, inasmuch as each of these is based on the allegation of constructive fraud, none need be considered here.

The judgment is affirmed. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

1. This is not a case where a managing general partner acquires the interest of a limited part-

ner who has no independent access to information about the nature and value of the business.