MRS. P. C. BLACK, Appellee, v. GRAIN SHIPPERS MUTUAL FIRE INSURANCE ASSOCIATION, Appellant.

INSURANCE: Proofs of Loss—Sufficiency of Evidence. Evidence
1 that proof of loss under a fire insurance policy was made out, verified, and mailed to the company, along with evidence on behalf of the company that no proofs of loss were ever received, raises such a conflict in the evidence that the jury or court findings thereon will not be disturbed on appeal.

EVIDENCE: Secondary—Notice to Produce Original—When Not
2 Necessary. When the adverse party is the only one who could have the possession of original papers, and such party bases his defense on the claim that he never received such papers, notice to produce is not necessary. So *held* in case of proof of loss under policy of insurance.

INSURANCE: Warranties to Be Indorsed on Policy—Waiver. Evi-
3 dence reviewed, and held to justify a finding that an insurance company had waived the provision of a policy requiring the warranty of the carrying of other insurance *to be indorsed on the policy.*

INSURANCE: Premiums—Payment—Estoppel. Evidence reviewed
4 and held to justify a finding that premiums on a policy of insurance had been paid, or if not paid, that the company was estopped to so claim.

INSURANCE: Cancellation—Question of Fact. Evidence reviewed
5 and held to justify a finding that a policy of insurance had not been cancelled.

*Appeal from Ida District Court.*—HON. M. E. HUTCHISON, Judge.

SATURDAY, APRIL 10, 1915.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1915.

ACTION at law upon a policy of fire insurance in the defendant company, covering a sawmill, fixtures, and appliances, in the state of Florida. The defendant denied liability, and on the issues joined, the case was tried to the court without a jury, resulting in a judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Johnston Bros,,* for appellant.

*Chas. S. Macomber,* for appellee.

DEEMER, C. J.—I. The policy was issued June 22, 1910, and was for the term of one year. The fire occurred October 5, 1910, and plaintiff claims to have made proofs of loss within a few days thereafter. Defendant averred in its answer that the policy never became effective because plaintiff did not pay the premium thereon. It denied having received proofs of loss. It also averred that there was a warranty clause attached to the policy, which was as follows:

## "WARRANTY CLAUSE.

"This policy is issued upon the understanding and warranty by the assured, that the Anchor Fire Insurance Company of Iowa has now a policy or policies in force, insuring the identical property described in this policy for the sum of $1,000 in form concurrent herewith, in identically the same proportions on each part thereof and at no higher rate of premium; and that said policy or policies as now written will be continued in force during the entire currency of this policy; otherwise this policy is void. It is further covenanted and agreed that no change or waiver of this warranty shall

be made without the written consent of this association, signed by an officer endorsed upon this policy and it is agreed if the conditions of the policy and warranty are fulfilled by the assured that this association in case of loss will follow the same adjustment and settlement of its liabilities as made by the ............ on the above described policy No. 95351 of the Grain Shippers Mutual Fire Insurance Association of Ida Grove, Iowa.

"Ida Grove, Iowa, June 2, 1910.

"F. D. Babcock, Secy."

And that among other things, the policy contained the following provision:

"This policy is made and accepted subject to the foregoing stipulations, and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer or agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such conditions or provisions, unless such waiver if any, shall be in writing upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It averred that this warranty clause was not complied with by plaintiff, and that she permitted the policy held by the Anchor Company to lapse, or to become cancelled; and that no substitution of companies was ever made or assented to by it. It also pleaded that because of plaintiff's failure to pay the premium and to keep the warranty clause in force, the policy was duly cancelled, and plaintiff is not entitled to recover thereon. Plaintiff, in an amendment to her petition,

pleaded that when the Anchor Company cancelled its policy, she took out a policy for a like amount in the National Fire and Marine Company of New Jersey, and notified defendant of that fact, receiving the following letter in answer:

"Ida Grove, Iowa, Sept. 24, 1910.

"Mr. R. S. Mahoney, Fernandina, Florida. Dear Sir: Replying to your favor of September 20th, received this morning. Our records show that policy No. 95351 has been paid for, although our broker in Chicago is not Mr. F. R. Thompson, but there are a good many brokers at 159 La Salle Street, or at least in that building. Our records show also that on September 8th, our broker in Chicago advised us that the warranty on policy No. 95351 had been changed to the National Fire & Marine Insurance Company of New Jersey for $1,000. Your letter asks us to change it to the National Insurance Company of Elizabeth, N. J. Now if that should not be the same insurance company as the National Fire & Marine Insurance Company, we shall be pleased to send you an indorsement or substituted warranty, and pending an answer to your letter the policy will be in full force provided the warranty company is either one of the companies above mentioned.

"Very truly yours,

"F. D. Babcock, Sec'y."

And in this connection, she averred:

"And this plaintiff states that while this letter was addressed to Mr. R. S. Mahoney, it was intended for her and in reply to her inquiry concerning her policy No. 95351 in said company. And she states that when she received said letter she believed that the secretary of defendant company was stating the facts, and she relied upon his statements as being the facts, and she now states that they were the facts when he wrote them, and she believes them to be the facts now, and they are the facts and she firmly relied upon said

statement, and it was on account of said letter that she took no steps to have a warranty clause sent her substituting the National Fire & Marine Insurance Company in place of the Anchor Fire Insurance Company of Iowa, firmly and truly believing that it was not necessary for her to do anything further. And she also states that she believes that Mr. Babcock told the truth when he said that the defendant company had been paid the premium for policy No. 95351 and that she now believes he told her the truth, and that said company had been paid said policy's premiums—she had sent a check to her agent, F. R. Thompson, for the purpose of paying said premium. And she further states that at all times and in all manners she complied with every requirement of her policy with defendant company, save where said defendant company has expressly waived its provisions as it did in having the warranty clause attached to its permission endorsed on her policy. And plaintiff states that defendant company waived by its secretary's letter and requirement, relating to said warranty clause and is estopped now from making any defense for the reason that no warranty clause was attached or endorsed on said policy. Wherefore plaintiff demands that the defendant company be estopped from pleading and defending this action for the reason that said warranty clause substituting the National Fire and Marine Insurance Company in place of the Anchor Fire Insurance Company was not attached to or endorsed on her said policy, and she demands judgment against the defendant company for the full amount of her damages under said policy, to wit, the sum of $1,000 and costs.''

Such were the issues on which the case was tried, and it is now insisted that the trial court was in error in rendering judgment for the plaintiff, for the reason that practically all of defendant's defenses were established by the evidence.

II. As to proofs of loss: The testimony on this point comes from plaintiff and the cashier of her bank in Florida,

and is to this effect: the cashier simply testified that before

**1. INSURANCE: proofs of loss: sufficiency of evidence.**

him as a notary public, plaintiff verified proofs of loss; and plaintiff testified that she verified the same before the cashier as notary public, and that she mailed sworn proofs of loss to the defendant company. The secretary of the company said that neither

**2. EVIDENCE: secondary: notice to produce original: when not necessary.**

he, as secretary, nor the company ever received any proofs of loss. It appeared during the examination of plaintiff that defendant was contending that it never received any proofs of loss; hence, notice to it to produce the same would have been a useless formality; and plaintiff also testified that she did not keep a copy of what she mailed to defendant. Under this state of facts, the trial court was justified in finding that plaintiff made out and duly mailed proofs of loss to the defendant.

III. As to the warranty clause: It is agreed that the Anchor policy was cancelled, but plaintiff contends that another was substituted in its place by agreement with the

**3. INSURANCE: warranties to be indorsed on policy: waiver.**

defendant company. Defendant denies the agreement, and also asserts that if any such agreement was made, it was invalid because not endorsed upon or added to the original policy, as provided therein. It is a well-established rule of this court that a defendant insurance company may waive a condition made for its benefit, especially such an one as that here relied upon, by the making of an agreement which it does not insist upon having attached to or added to its policy. *Bloom v. Ins. Co.*, 94 Iowa 359; *Liquid Carbonic Co. v. Ins. Co.*, 126 Iowa 225.

In the letter attached to plaintiff's amendment to the petition heretofore quoted, written by defendant's secretary to the plaintiff, under date of September 24, 1910, it appears that the substitution of a policy issued by either of the New Jersey companies named was agreed to, and that, pending answer to the letter, the policy would be regarded in full

force if there was a policy in either company to the amount of $1,000.

We may remark parenthetically that S. R. Mahoney was plaintiff's maiden name, and that the letter reached plaintiff in due course. It appears that plaintiff had a policy for $1,000 in the National Fire & Marine Insurance Company of Elizabeth, New Jersey. The letter from plaintiff to the defendant which called forth the letter from the company of date September 24th, already referred to, is as follows:

"No. of Policy 95351.

"Fernandina, Fla., Sept. 20, 1910.

"Mr. F. D. Babcock, Dear Sir:—I have your policy for $1,000 on sawmill at Highland, Fla. It has a warranty clause for the Anchor Insurance Co. of Iowa, which time has expired, and I do not deem it necessary to renew. Will you send me a warranty clause and make it for the National Insurance Company of Elizabeth, New Jersey, in which company I have $1,000 and believe it a good company. Kindly send me the *clause at once* and let me know if Mr. F. R. Thompson of 159 La Salle St., Chicago, Ill., has paid you for this policy. I sent him $73 & 50c (73.50) about the 25th of June to pay for this policy, was not this amount too much? I will prefer to deal with you direct, as I have had some trouble in his *not* paying a policy in another company. Will appreciate your sending clause to me direct and thanking you, I am

"Very respect.,         S. R. Mahoney,

"Fernandina, Fla."

On the 27th of September, plaintiff responded to defendant's letter of September 24th, and the only thing in the record showing the nature of this letter is the testimony of the defendant's secretary as to its contents, as follows:

"I remember in a general way the contents of the letter of Mrs. Black to us under date of September 27, 1910. She

asked us to send the clause to attach to that policy, the warranty clause.''

To this defendant made the following response:

"Oct. 3rd, 1910.

"Mr. S. R. Mahoney, Fernandina, Fla. Dear Sir: Your letter of Sept. 27th, asking for substituted warranty for policy No. 95351 is received, and we have referred this matter to our broker in Chicago, who wrote this business for us.

"Very truly yours,

"F. D. Babcock, Secretary."

At the same time, defendant wrote its Chicago broker as follows:

"Oct. 3rd, 1910.

"Messrs. Chas. Brock Jones & Co., Chicago, Ill. Dear Sirs: As requested in your favor of October 1st under another cover we will send you a supply of envelopes.

"We are requested by S. R. Mahoney to attach a warranty clause to our policy No. 95351 to read 'The National Fire Marine Insurance Company of Elizabeth, N. J.' I will write Mr. Mahoney that we have referred the matter to you; this being agreeable to your letter of the 26th ult. I suppose of course you have the money for this policy long since and turned it over to us.

"Very truly yours,

"F. D. Babcock, Secretary."

As already indicated, the fire occurred October 5th, and so far as shown, nothing else was done regarding the substituted warranty clause, save that on the 3rd day of October, the insurance broker in Chicago through whom plaintiff obtained her policy in the defendant company wrote the following letter to the recognized Chicago broker for the defendant company:

"Oct. 3rd, 1910.

"Messrs. C. Brock Jones, 159 LaSalle St.  Gentlemen: Several days ago you stated that the home office of the Grain Shippers had written you that S. R. Mahoney assured under No. 95351 had written the home office requesting a change of warranty, and I told you not to make it on account of all the other companies cancelling off.  I don't know just what is the matter, but it occurred to me that it was good risk to get off of, so I wrote the assured to return the policy.  Kindly advise the home office that in event the policy is sent in for cancellation, to return it with the statement, that it must be returned through the same source that it was procured.  I haven't had a settlement yet, and think this will force it.

"I thank you very much for your courtesy.

"Yours very truly,     F. R. Thompson."

And this broker on the same date also wrote plaintiff the following:

"Chicago, October 3d, 1910.

"S. R. Mahoney, Esq., Fernandina, Fla.  Dear Sir: Up to this writing you have not returned Grain Shippers policy No. 95351, and every day that you delay it means just so much less return premium.  Don't you think it advisable to return it immediately?  Awaiting which I am,

"Yours very truly,

"(Signed)   F. R. Thompson."

Under this state of the record, the trial court may well have found that the defendant itself, by its letter of September 24th, recognized the policy as in full force, provided plaintiff had insurance in either of the New Jersey companies, at least for such a reasonable time after the writing of the letter as in the circumstances would be proper for a reply.  Plaintiff did reply on the 27th, asking for a warranty clause to be attached to the policy, and on October 3rd wrote plaintiff the letter already quoted, and also to its Chicago broker.  Plaintiff, however, denies receiving any letter from defendant after the

one dated September 24th. In these latter letters, there was no suggestion that the defendant was receding from the proposition contained in its letter of September 24th, and we are constrained to agree with the trial court in its holding that the attachment of the warranty clause was waived.

IV. As to the payment of the premium: Plaintiff secured her policy by correspondence from one F. R. Thompson of Chicago, Illinois, who was an insurance broker residing in that city. Defendant says that Thompson was not its agent or broker, and plaintiff testified that she employed him as an agent or broker to place $3,000 of insurance for her, but that she did not employ him generally and did not recognize his right to cancel or receive notices of the cancellation of policies, or to make settlement of her policy rights in the defendant company. For the purposes of the case, we must treat Thompson as plaintiff's agent with reference to the policy in suit. Defendant has at all times taken the position that he was not its agent, although for some purposes it is now seeking to rely upon what he did as its agent. We do not seem to have the full correspondence which passed between these parties; but from what we do have, it appears that plaintiff was directed to Thompson by a local insurance agent in Florida, and that she wrote him to place $3,000 of insurance for her upon her mill property. The following correspondence, given chronologically, between plaintiff and this broker is all that appears in the record:

> "Chicago, July 2nd, 1910.

"Mr. S. R. Mahoney, Fernandina, Fla. Dear Sir:—I have been able to secure another $1,000 on your sawmill in the Grain Shippers of Iowa, and herewith enclose its policy, No. 95351.

"I have found this company to be equitable in its adjustment of its losses and prompt in its payments.

"I shall endeavor to secure the other $1,000 but I have run out of the *printed forms such as are attached* to this pol-

4. INSURANCE:
premiums:
payment:
estoppel.

icy.  If you *will send me seven or eight,* I shall appreciate it very much.                     Yours very truly,

"(Signed)   F. R. Thompson."

"Aug. 31st, 1910.

"Mrs. S. R. Mahoney, Fernandina, Fla.   Dear Madam:— I am herewith enclosing my check No. 915 payable to your order in the sum of $68.75 for unearned premium on Anchor policy No. 105479, also check No. 916 in the sum of $59.30 for unearned premium on Security Mutual No. 100362.

"Grain Shippers policy No. 95351 contains a warranty clause that the Anchor Fire Insurance Company of Iowa will retain at all times during the currency of the Grain Shippers policy, at least $1,000, and as the Anchor policy has been cancelled the Grain Shippers policy will be automatically cancelled.   It becomes necessary to change this warranty clause, so as to follow some other company.   You wrote me some time ago that you had a policy in the National Fire & Marine Insurance Company of New Jersey for $1,000, and if this is still in force, I will have the warranty clause substituted on the Grain Shippers policy · to follow the National.   Please advise me on this point immediately, thus obliging,

"Yours very truly,                       F. R. Thompson."

"Chicago, Sept. 10th, 1910.

"S. R. Mahoney, Esq., Fernandina, Fla.   Dear Sir:  I find that through an error I sent you my check No. 915 in the sum of $68.75 for return premium on Anchor policy No. 105479; when in reality you had not paid the premium on it, which amounted to $73.50.   Therefore, it will be necessary for you to send me by return mail a check in the sum of $73.50. The policy had earned $4.75 for the time that it was in force, which was nearly a month.   Altogether I sent you three policies, namely the Security, Grain Shipper, and Anchor, each was in the sum of $1,000 making a premium on each of $73.50, or a·total of $220.50.   The Security and Anchor policies were cancelled, and I sent you separate checks for the return

premium on each, thinking that you had sent me checks for the full premium of $220.50, while in reality you sent but $147.00.

"If you will send me a check for $73.50 by return mail, I will see that a new warranty clause is made out for the Grain Shippers policy, so as to keep it in force, and also place the $3,000 which you ordered a few days ago if possible. Thanking you very much for your prompt compliance, I am,.

"Yours very truly,

"(Signed)   F. R. Thompson."

"Fernandina, Fla., Sept. 14, 1910.

"Mr. Thompson: Dear Sir:—Your letter arrived; I sent you $147.00 and have only one policy the Grain Shipper, which is not worth a penny without that clause in it, therefore it is your duty to send it at once to me or cancel premium. I figure you owe me $65.30 on the cancelled premium of another company (have forgotten name) and sent on draft which was long since due, the protest fee was $2.58 which I enclose.

"Now I shall not send you a check until you send me the clause for the Grain Shipper's policy as it is not worth anything as it stands and for two months now I have been paying for a policy which is no good. After this if you want to write a policy for the 3 thousand and do not care to trust me, you can send it to the bank here. Please let me hear from you at once. Very respectfully,        S. R. Mahoney."

"Sept. 17th, 1910.

"Mrs. S. R. Mahoney, Fernandina, Fla. Dear Madam: I am obliged to report to you my inability to execute your order of $3,000 on your sawmill, although I have tried every available capacity.

"Regarding your remarks in your letter of the 14th, pertaining to protest fees, will say that I see no reason why you should have drawn on me for return premium, and especially so as I had sent you two checks covering return pre-

miums, when in reality I should have sent you but one, on account of your not having paid the original premium on the Anchor policy.

"The Grain Shippers policy, as it stands today, is not valid on account of the warranty clause being violated by cancellation of the Anchor policy, and for that reason, I think it best for you to return the policy so that the return premium may be collected thereon.

"If you will return the policy in enclosed envelope, I will have it cancelled and return premium collected at an early date.                    Yours very truly,

"F. R. Thompson."

"Fernandina, Fla., Sept. 20, 1910.

"Mr. F. R. Thompson, Dear Sir:—Please send me your check for cancelled premium on policy Grain Shippers—it has been no good since 1st day of Aug.—when the Anchor was cancelled. Please figure to that time. Cancelled premium are dollar for dollar and no discount which your check did not give me. I enclose letter from A. J. Van Dunn & Co., which explains itself. Had the mill burned, where would I have been. Now if you do not send me the amount I shall take it up with the Grain Shippers people direct. You can send your check to First National Bank with the request to forward Grain Shippers policy, they do not charge me for any such collection. I have had awful experience with the rascality of insurance agents in the past year and you will have to excuse me if I am a trifle particular, and try to keep my eyes open. Hoping this explanation is satisfactory, I am,

"Very respectfully,              S. R. Mahoney."

On the same day this letter was written, plaintiff sent her letter to the defendant company, under date of September 20th already quoted. This was followed by one from Thompson to plaintiff, under date September 23, 1910, as follows:

"Chicago, Sept. 23, 1910.

"Mrs. S. R. Mahoney, Fernandina, Fla. Dear Madam: I have yours of the 20th regarding Grain Shippers policy. In reply would say that I cannot make any returns on this policy until you send the policy to me, so that I can cancel it with the company, and secure the return premium. When this is done I will make an accounting with you immediately.

"Be kind enough therefore, to return the policy by return mail thus obliging,

"Yours very truly,        F. R. Thompson."

This was all which passed prior to the fire. But under date of October 10, 1910, Thompson wrote plaintiff as follows:

"Chicago, Oct. 10th, 1910.

"Mrs. S. R. Mahoney, Fernandina, Fla. Dear Madam: I received your telegram of the 6th, and also your letter of even date, to the effect that your mill at Highland had been destroyed by fire. For two months I have been trying to get you to balance your account by paying the amount due per the statement rendered you the first part of August amounting to $73.50, but for some reason or other you did not remit. And in the meantime the Chicago agent of the Grain Shippers decided it was best to retire its policy, and I wrote you to return it, at the same time advising you that I was unable to complete your order for further insurance on the mill. The Chicago agent of the Grain Shippers is Messrs. Charles Brock Jones & Co., 159 La Salle Street, Chicago, and with whom you will have to communicate regarding this policy.

"Yours very truly,        (Signed)        F. R. Thompson."

And thereafter, under date of January 20, 1911, Thompson wrote defendant's acknowledged broker the following:

"Chicago, January 20, 1911.

"Messrs. Chas. Brock Jones & Co., Agents, Grain Shippers Mutual Fire Ins. Co., 159 La Salle St., City. Dear Sir: I desire to verify my conversation with you regarding the

warranty clause under policy No. 95351, S. R. Mahoney, to the effect that I did not deliver warranty clause substituting the National F. & M. in lieu of the Anchor. I wrote the assured under date of September 17th, 1910, (copy of which letter you have in your possession) that the Grain Shippers policy as it stood on that date is not valid on account of the warranty clause being violated by cancellation of the Anchor policy, and for that reason requested the return of the policy for cancellation. Under date of September 20, 1910, assured wrote me in reply (copy of which you have) that the Grain Shippers policy had been no good since August 1st, 1910. Regarding the payment of the premium, I wish to say that originally I placed three policies for this assured with a premium of $73.50 on each policy and received a check from assured for $147.00. Two policies were cancelled and I sent separate checks for the return premium thereunder, which you can readily see balanced the account on my books.

"I think this is the information desired by you, and remain, Yours very truly, (Signed) F. R. Thompson."

This closed the correspondence, except the letter hitherto quoted, under date of October 3, 1910, from Thompson to the plaintiff. From this it appears that the trial court was justified in finding that both Thompson and the defendant (the latter by admission in its letter of September 24th) received the premium on the policy, or that defendant is estopped from denying that it received it.

V. As to the cancellation of the policy: This is the most troublesome question in the case. If Thompson were defendant's agent, it might well be found that the policy was cancelled both for nonpayment of premium and

5. INSURANCE: cancellation: question of fact.

because of breach of the warranty clause. But it is practically conceded that Thompson was plaintiff's agent, and the only effect which can be given to the correspondence which passed between plaintiff and this agent, is to show plaintiff's intent in the matter, or her

admissions. The latter may be shown by her declarations to her own agent and the correspondence which passed between them; but defendant cannot rely upon this correspondence as an estoppel; for it was not addressed to its agent, nor did it have any knowledge thereof. In its own correspondence with plaintiff, it admitted the receipt of the premium and consented to the substitution to meet the warranty clause, and it at no time before the fire claimed that the policy had been cancelled or forfeited for nonpayment of premium or for any other reason. On October 3rd, defendant wrote its own agents, Chas. Brock Jones & Company, to the effect that it approved of the substitution of the New Jersey company for the Anchor Company. It also assumed that it had the premium for the policy. It is true that, on October 3rd, Thompson wrote plaintiff, reminding her that she had not returned her policy in defendant company, and suggested that she do so immediately; and on the same day, he wrote defendant's Chicago brokers or agents, advising them not to make the change of warranty and suggesting that this was a good risk ''to get off,'' and that he had written plaintiff to return the policy. He also asked that if the policy be returned for cancellation, it be sent to him in order that he might force a settlement. Here again we think the question of cancellation was one of fact for the court. As it found there was none, we are not disposed to interfere. The Chicago broker or agent, Thompson, was evidently not working in the interest of his principal, the plaintiff, and what he did, did not amount to a cancellation of the policy; and the defendant itself did nothing before the fire toward cancelling the policy, nor did its agents, Jones & Co., do anything along that line. The trouble seems to have been between plaintiff and her agent, the latter either looking after his own personal interests, or trying to get rid of the policy for the protection of the company, rather than for the benefit of his principal.

The record is not as complete as it might have been

made; but enough appears to justify the finding of the trial court, and its judgment must be, and it is—*Affirmed*.

LADD, GAYNOR and SALINGER, JJ., concur.