## MARYLAND CASUALTY CO. v. BEEBE.
### No. 478.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1931.

Robert L. Judd, of Salt Lake City, Utah (Emmett M. Bagley, Paul H. Ray, and A. H. Nebeker, all of Salt Lake City, Utah, on the brief), for appellant.

Henry D. Moyle, of Salt Lake City, Utah (Robert C. Wilson, of Salt Lake City, Utah, on the brief), for appellee.

Before COTTERAL and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

This is an action at law upon an accident insurance policy. The case was tried to a jury, but at the conclusion of the evidence there was no dispute as to the facts on two decisive issues. The defendant moved for an instructed verdict, and, while the plaintiff made no such motion formally, her counsel did advise the court that he did not see any question of fact to be submitted to the jury. Thereupon the trial court directed a verdict for the plaintiff. We think the parties submitted the case to the court for its decision; we see nothing of substance to go to the jury; we shall therefore inquire as to whether there is support in the evidence for the judgment rendered.

■ At the outset we are met with the contention of appellee that the evidence is not available for our consideration because of the form of the certificate of the trial judge to the bill of exceptions. The certificate recites that the bill of exceptions contains the "substance of all of the evidence and proceedings had on the trial of said cause, and all of the same that is necessary or material to a consideration and review of the exceptions alleged and errors assigned and not otherwise appearing of record herein." The objection is to the use of the word "substance." Rule 10 of this court provides that only the evidence which bears on and elucidates the exceptions reserved should be set out in the bill of exceptions, and "such evidence as is embraced therein shall be set forth in condensed and narrative form, save as a proper understanding of the questions presented may require that parts of it be set forth otherwise." The bill of exceptions in this case is in proper form; the certificate of the trial judge is in exact accord with the rule and proper practice. Lindner Packing Co. v. Kokrda (C. C. A. 10) 54 F.(2d) 31; Zeller's Lessee v. Eckert, 4 How. 289, 297, 11 L. Ed. 979; Krauss Bros. Co. v. Mellon, 276 U. S. 386, 48 S. Ct. 358, 72 L. Ed. 620.

■ The plaintiff sued as the beneficiary of the policy. The defendant answered that the beneficiary had been changed to the estate of the insured upon the written request of the insured; that settlement had been made with the estate and the policy thereupon canceled and surrendered. It was further alleged that the plaintiff knew of and acquiesced in this settlement with the estate; had filed her claim for board and room against the estate, and had accepted and retained part of the proceeds of the policy in satisfaction of that claim. To which the plaintiff replied that the signature of the insured to the indorsement changing the beneficiary was forged; that his genuine signature was procured by fraud; that the insured did not intend the change to be presently effective; that the insured did not physically attach the rider to the policy. As to the estoppel, she replied that her attorney, who was also attorney for the estate, surrendered the policy in violation of his trust.

There is no dispute as to the facts. The plaintiff was not related to the insured; he lived at her home, and they were engaged to be married. She testified: "My relationship to the insured was everything—as much as a wife would be to him. I had financed him on different occasions—I had loaned him money and he had me." In March, 1928, the insured applied for a policy with plaintiff as beneficiary; the application stated she was not related to him. An agent delivered the policy to the insured, naming plaintiff as beneficiary. When the home office was advised that the policy named a beneficiary with no disclosed insurable interest, it wrote its agent either to cancel the policy, as it had a right to do, or to get the beneficiary changed, which the insured had a right to do without the consent of the beneficiary. The agent told the insured, "I would either have to take up the policy or else have an endorsement placed on the policy changing the beneficiary from Lizzie J. Beebe to his estate." The insured wanted to know why, and was

told. The insured signed three copies of an indorsement changing the beneficiary to his estate; the insured kept one copy, the agent telling him to attach it to the policy in his possession, to which the insured assented. He did not so attach it. The agent told him he could probably fix it by his will so Mrs. Beebe could get the money; he said he would do that, but did not.

The insured was accidentally killed in December, 1928. Mrs. Beebe had possession of the policy, and demanded payment. Payment to her was refused, and she delivered the policy to one Brockbank, her attorney. He conferred with attorneys for the company, and, after looking up the law, Brockbank concluded that "the company had the right to change the beneficiary," and so advised her. Brockbank then had an administrator appointed. Except for $38.65 cash, the only asset in the estate was this policy of insurance, a fact undoubtedly known to Mrs. Beebe. The company claimed that the insured was intoxicated when he was killed, which, if true, was a complete defense to the policy. There was evidence in support of such claim, and the defense was put forth in good faith. A settlement of $3,650 was agreed upon between Brockbank and the attorneys for the company, which was approved by the probate court. The money was paid to Brockbank as attorney for the administrator, the policy surrendered by Brockbank, and a release taken. He retained $900 for his services, leaving the administrator $2,750. Mrs. Beebe filed a claim against the estate for $1,955, which was allowed for $905, and paid. Brockbank advised her to file this claim. Mrs. Beebe does not, and cannot, deny that she knew this payment to her was made from the insurance money. Brockbank's only explanation of his conduct in the case is that "I thought she better have two chances rather than one."

Under these undisputed facts, the trial court entered judgment for Mrs. Beebe for the face of the policy and interest, less the $905 she had theretofore received from the administrator. In this there was error. A judgment should have been entered for the defendant.

The plaintiff was not the beneficiary of the policy at the time of the death of the insured. The company had a contractual right to cancel the policy; it advised the insured that it would exercise that right, unless the beneficiary was changed. Grudgingly, it is true, but without restraint or intimidation, the insured signed an indorsement changing the beneficiary. He retained one copy, and two copies were delivered to the company. When this was done, the beneficiary was changed. The plaintiff asserts that the change was not effective until the insured performed the physical act of pinning or pasting this indorsement on the policy, and relies upon two of the standard provisions; one of them is that "this policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance"; the other is "no change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon." But, where the parties have agreed upon a change, and have signed a memorandum thereof, the change is effective, even though by neglect or oversight the memorandum is not physically attached to the policy. It is a matter of common knowledge that indorsements on insurance policies such as vacancy permits, mortgage clauses, and the like, are often sent to the insured through the mail; the insured does not forfeit his insurance because he neglects to paste or pin the rider on the policy. This common sense view has been taken whenever the question has arisen. Black v. Grain Shippers Mut. Ins. Assn., 171 Iowa, 309, 152 N. W. 7; Mattocks v. Des Moines Ins. Co., 74 Iowa, 233, 37 N. W. 174; Bennett v. Western Underwriters' Ass'n, 130 Mich. 216, 89 N. W. 702; American Central Ins. Co. v. Hardin (Tex. Civ. App.) 151 S. W. 1152; Cosmopolitan Fire Ins. Co. v. Gingold, 3 Ala. App. 537, 57 So. 266; Emery v. Lord, 29 App. D. C. 589. It is well settled that if an authorized agent of the insurer has custody of the policy, and agrees to attach a rider thereto, but neglects to do so, the insurer is bound. Cooley's Briefs on Insurance, p. 4200, and cases there cited. The rule works both ways. Where the insured has access to the policy, the rights of the insurer are not altered by the failure of the insured physically to attach an agreed indorsement to a policy.

The second defense is likewise impregnable. Although the court for some reason did not permit the attorney for the company to tell his version of the negotiations with Brockbank, Brockbank testified to them, and from what he said and did not say, and from what Mrs. Beebe said and did not say, the facts stand out in bold relief. Brockbank was Mrs. Beebe's attorney throughout. She turned the policy over to him to collect; he concluded she could not recover, but that an administrator could;

he so advised her; he procured the appointment of an administrator and collected on the policy; he advised her to file a claim against the estate, and she swore to it before him; she took all the proceeds of the policy after the bills were paid. The estate consisted of the proceeds of this policy, $3,650 and $38.65 in cash. After Brockbank, the administrator, the undertaker, and several small bills were paid, Mrs. Beebe took every penny that was left. Mrs. Beebe knew all about the transaction, and does not deny it. Brockbank testified, "I never gave Mrs. Beebe any notice of termination of our relationship." Of course he did not, because the relationship was not terminated. Neither did he notify the company of such nonexistent termination. The fact is Mrs. Beebe's attorney, with full authority, collected this policy in the name of an administrator, the only way it could be collected. And if either Brockbank or Mrs. Beebe had denied the antecedent authority, the facts disclose a perfect case of ratification—an adoption of his acts by accepting the fruits thereof with full knowledge of the facts. Furthermore, subject to limitations not here pertinent, one cannot retain the fruits of an unauthorized act and disclaim the authority of the procurer. He ratifies who does not restore. It should be unnecessary to cite authority in support of such a fundamental rule; but see, McIntire v. Pryor, 173 U. S. 38, 52, 19 S. Ct. 352, 43 L. Ed. 606; Mechem on Agency (2d Ed.) § 1993; Williston on Contracts, § 1518; Goldsmith v. Koopman (C. C. A. 2) 152 F. 173; Renick v. Mutual Life Ins. Co. (Ky.) 106 S. W. 310; Griffin's Adm'r v. Equitable Assur. Soc., 119 Ky. 856, 84 S. W. 1164; Gardner v. Glendale, 45 Cal. App. 641, 188 P. 307; Kelly v. Conn. Mut. Life Ins. Co., 27 App. Div. 336, 50 N. Y. S. 139; 27 C. J. 12; 2 C. J. 493, 496.

This lawsuit is an effort to procure for her the "two chances" her counsel advised her was better than one. It is an unconscionable effort to collect twice on the same policy. The trial court's theory was that Brockbank had shifted from the position of attorney for Mrs. Beebe to that of attorney for the administrator, without notice to the company, and that, if Brockbank had bilked the company, the company's remedy was against Brockbank. We cannot agree. There is no substantial evidence that Brockbank terminated his attorneyship for Mrs. Beebe; he does not so testify; and the record, as a whole, shows conclusively that the relationship was not terminated. If

Brockbank had any part in the bringing of this action, he is subject to censure. But that does not entitle Mrs. Beebe to recover on a policy to which she is a stranger, nor justify her efforts to collect twice on the same policy.

Since the case was submitted to the trial court upon undisputed and agreed facts, there is no occasion for a new trial. Howbert v. Penrose (C. C. A. 10) 38 F.(2d) 577, 68 A. L. R. 820, and cases there cited. The judgment is reversed, with directions to enter judgment for the defendant.

Reversed.